**CARTER, State Auditor, v. RECTOR et al.**

No. 11366—Opinion Filed Nov. 28, 1922.

Rehearing Denied Dec. 19, 1922.

(Syllabus.)

1. **Taxation — "Income" — Price Paid for Lease on Producing Oil Property.**

Under section 5, ch. 164, Session Laws 1915, the consideration paid for a lease on already producing oil property constitutes income to the owner of the land.

2. **Same — Judgment Exempting Purchase Price—Reversal.**

Record examined; the judgment of the trial court reversed, and the cause remanded, with directions.

Error from District Court, Oklahoma County; Edward D. Oldfield, Judge.

From assessment of income tax by F. C. Carter, State Auditor, Sarah Rector, by her guardians, appealed to District Court. Judgment for appellant, and the State Auditor brings error. Reversed and remanded, with directions.

S. P. Freeling, Atty. Gen., and C. W. King, Asst. Atty. Gen., for plaintiff in error.

W. E. Disney and John Wheeler, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Oklahoma county; Hon. Edward D. Oldfield, Judge.

The judgment appealed from is as follows:

"Now on this 16th day of February, a judicial day of the January term of said court, this cause comes on to be heard upon the appeal of Sarah Rector, a minor, by her guardians, from a decision of Frank Carter, State Auditor, under date of August 4, 1919, both parties being present by attorney, and the cause having been submitted upon the transcript of appeal and the agreed statement of facts, and the court having heard all the evidence and the argument of counsel, and being fully advised in the premises, on consideration thereof, finds: That on the 28th day of February, 1919, M. G. Young and C. A. Looney, as guardians of Sarah Rector, a minor, made income tax return for said Sarah Rector for income received during the year ending December 31, 1918, which said income tax return was duly filed in the office of Frank Carter, State Auditor of the state of Oklahoma; that in said income tax return as made by said guardians it was recited that the total tax to be paid on said income of Sarah Rector for the year 1918 was the sum of $1,745.78; that said guardians in said report called the attention of the auditor to the fact that there was received during said year the sum of $300,000 from the sale of an oil and gas mining lease on the land of said minor, and that said guardians did not return the same as income for the reason that said guardians claimed the same was not income within the meaning of the income tax law; that thereafter the said Frank Carter, State Auditor, notified said guardians that he had revised said return to include the said sum of $300,000 as income and had included in the total tax to be charged against said minor the sum of $6,000, being two per cent. of the said $300,000, and demanded payment of said amount. The court further finds that thereupon said guardians paid said amount to said State Auditor, together with other taxes claimed by him to be due on said return, and paid same under protest, together with notice to said State Auditor that an appeal would be taken from his decision, and that a refund of said tax would be claimed. The court further finds that upon a hearing had before said auditor, the said auditor refused to allow the claim of said guardians, refused to correct the income tax return, as revised by him, and refused to deduct the said sum of $300,000 from the total net income report by said guardians, and refused to deduct the said sum of $6,000 from the total income tax entered against said minor; that from the decision of said auditor an appeal was taken by the said Sarah Rector in due form of law, and regularly lodged in this court. The court further finds that the said sum of $300,000, upon which the

said auditor levied and collected the sum of $6,000 as income tax, was the proceeds from the sale of an oil and gas mining lease on the allotment of said minor to the Prairie Oil & Gas Company, a corporation; that the said allotment was acquired in 1907, and said property was thoroughly developed for oil and gas mining purposes and the maximum value thereof for oil and gas mining purposes was reached prior to the time of the adoption of the state income tax law in 1915; that the value of the interest conveyed by said oil and gas lease to the Prairie Oil & Gas Company on the 30th day of April, 1918, was $300,000; that said $300,000 was the sale price from said lease.; that said $300,000 was not income within the meaning of the income tax law of the state, but was merely a conversion of capital from one form to another, and no profits or taxable income was received from said sale; that no income tax was or is due from any part of the $300,000 received from said sale. The court further finds that the interest conveyed by said oil and gas mining lease for $300,000 was an interest in the real estate of said minor, and that said interest was acquired by said minor more than a year prior to the year 1918; that said Frank Carter, State Auditor, erroneously charged and collected as income tax on said $300,000 the sum of $6,000, which amount was paid by Sarah Rector, through her guardians, to said Frank Carter, State Auditor, under protest, as provided by law; that said $6,000 taxes were illegally collected; that said sum was not owing to the state; that the true and correct and legal amount of taxes owed by said Sarah Rector was the sum of $1,964.55; that the said sum of $6,000 paid was in excess of the legal amount due, and should be refunded by said Frank Carter, State Auditor, to said Sarah Rector; to all of which findings of fact the said Frank Carter, State Auditor, through his attorney, excepts, and the court being fully and sufficiently advised in the premises—

"It is, therefore, considered, ordered, adjudged that the true and correct amount of taxes due from said Sarah Rector to Frank Carter, State Auditor, as income tax for the year 1918, is $1,964.55; that the said Frank Carter be, and he is hereby, ordered and directed to correct the return of said Sarah Rector, a minor, as revised by him, the said Frank Carter, in accordance with this order, and that he deduct therefrom the said sum of $300,000 as a part of the net income of said minor, and that he further deduct the sum of $6,000 from the total taxes charged by him against said minor; and it is further considered, ordered and adjudged that the said Frank Carter, State Auditor, refund to the said Sarah Rector the said sum of $6,000 collected by him in excess of the legal amount due, and so paid by the said Sarah Rector under protest, and that he take a receipt therefor; from all of which judgment and order of the court the defendant, Frank

Carter, through his attorney, excepts, and in open court gives notice of appeal from said judgment and order to the Supreme Court of Oklahoma, which appeal is by the court allowed, and for good cause shown, the said Frank Carter, State Auditor, is granted an extension of — days from this date within 'which to perfect appeal.

"Edward D. Oldfield, Judge."

It is conceded in the briefs of counsel that the question involved in this case is whether the purchase price paid for a lease upon already producing oil property constitutes income, within the meaning of that term as described in the income tax act of Oklahoma, being section 5, ch. 164, of the Session Laws of 1915.

· The only question presented by the assignments of error may be stated as follows:

· "Does a consideration paid for a lease on already producing oil property, constitute income to the owner of the land, or is said amount a conversion of capital?"

Income, as described by the income tax act, herein above referred to, being section 5, ch. 164, Session Laws 1915, is defined as follows:

"The term 'income,' as used in this act, shall include:

· "(a)   All rentals derived from real estate or any interests thereunder of a potential duration of two years or more.

"(b).   All interest derived from money loaned or invested in notes, mortgages, bonds or other evidence of debt of any kind ·whatsoever.

"(c) .   All wages, salaries or fees derived from services; provided, that compensation of public officers for public services shall not be computed as a part of the taxable income in such cases where the taxation thereof would be repugnant to the Constitution.

"(d)   All dividends or profits derived from stocks or from the purchase and sale of any property, or other valuables acquired within one year previous, or from any business whatsoever.

"(e)   All royalties derived from the possession or use of franchises or legalized privileges of any kind.

"(f)   And all other income of any kind derived from any source whatsoever, except such ·as is exempt from taxation hereunder by some law of the United States or of this state."

The position of the plaintiff in error, the State Auditor, is clearly stated in the Attorney General's brief as follows: ·

"In order for defendant in error to escape payment of income tax upon the $300,000 bonus paid for the lease, it is necessary for the court to hold that the income so derived, constitutes 'a sale of property or other valuables acquired within one year previous,' under subsection (d) of section 5, chapter 164, Session Laws of 1915. In other words, the $300,000 must represent the purchase price of property, owned by the grantor more than a year prior to the sale. The oil and gas not being capable of ownership, as shown by all the Oklahoma cases above cited, and those from many other states, it is quite clear that this sum cannot escape taxation by coming within the exception named.

"The real consideration for the lease is the right to explore and extract such oil and gas as may be found, and quoting from the case of Rich v. Doneghey [71 Oklahoma, 177 Pac. 86], at page 89 of the opinion, the repeated holdings of this court, as well as holdings from other oil producing states, are re-affirmed in the following language: 'In the consideration of the questions presented it will perhaps prove helpful if notice be first taken of the rights of the lessee created by the written instrument in question.   At the time of its execution the plaintiffs were the owners in fee simple of the land.   By virtue of such ownership they had, on account of the "vagrant and fugitive nature" of the substances constituting "a sort of subterranean ferae naturae" (In re Indian Territory Ill. Oil Co., 43 Okla. 307, 142 Pac. 997), no absolute right or title to the oil or gas which permeate the strata underlying the surface of their land, as in the case of coal or other solid minerals fixed in, and forming a part of, the soil itself.   Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. St. 576, 44 L. Ed. 729.'"

Other decisions cited by the Attorney General in his brief are: Von Vaumbach v. Sargent Land Co., 242 U. S. 503, 61 L. Ed. 460 (Minn.); Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487; Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902; Smith v. Root, 66 W. Va. 633, 66 S. E. 1005; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 515; Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86.

The lease in the instant case, after reciting 'the consideration of $300,000 in hand paid, contained the following language, constituting the grant:

"Have granted, demised, leased and let and by these presents do grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said production."

This court, in the case of Garfield Oil Co. v. Champlin, supra, wherein the granting

clause was similar, stated in paragraph 5 of the syllabus as follows:

"Under the decisions in this state, oil and gas, while in the earth, unlike solid minerals, are not subject to ownership distinct from the soil, and the grant of the oil, therefore, is a grant not of the oil that is in the ground, but of such a part as the grantee may find. * * *"

And in the body of the opinion further stated:

"The lease in the instant case explains fully the nature and extent of the interest passed to the lessee; that is, the lessor grants, demises, leases, and lets unto the lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, towers, stations, and structures thereon to produce, save, and take care of said products. * * *"

It seems clear to us that nothing short of an unconditional sale of the land would permit the interpretation sought to be placed upon the transaction by defendant in error; that is, to invoke the theory of "converted capital" by outright sale of the mineral, which can only be accomplished, when in place, by the sale of the land containing it.

As we have seen, the defendant in error contends that the bonus of $300,000 was not income within the meaning of the act, supra, but, upon the contrary, was a conversion of capital, and, therefore, not subject to the tax.

Counsel for defendant in error first cite in their brief a discussion of the term "conversion of capital" in Black on Income Taxes, pages 81 and 83, wherein the author says:

"Both in popular and legal parlance, 'income' is distinguished from 'capital' or 'principal.' Capital is the source of income. Income is the fruit of capital. Capital may be made very mobile and constantly changed from one form of investment to another. Each time that it returns to the owner it may or may not bring income with it. But it would be a misnomer to reckon the whole of each such return as 'income' simply because it is so much money coming into the possession of the owner * * *"

We have no fault to find with this discussion by the learned author, nor do we think that the same is in conflict with the definition of income found in the act, supra, which is: (a) "All rentals derived from real estate or any interests thereunder of a potential duration of two years or more." Under this definition, as pertains to real estate, two things are income: First, all rentals derived therefrom; second, any interests thereunder of a potential duration of two years or more.

The lease was for a term of five years and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee.

Counsel for defendant in error concede that the royalties retained in this form of lease constitute income as defined in the act, but argue that the $300,000 bonus was a conversion of capital, or was the proceeds of a sale of an interest in the land. If their argument be correct, such bonus was not income within the definition found in Black on Income Taxes, supra, but constituted a conversion of capital. The second thing that constitutes income under the definition in the act is, all rentals derived from any potential interests under the contract having a duration of two years or more.

In volume 2, Pope, Legal Definitions, page 1210, it is stated as follows:

"In the legal sense, things are said to have a potential existence when they are the natural product or expected increase of something already belonging to the vendor. When one possesses a thing from which a certain product, in the very nature of things, may be expected, such product, we think, has a potential existence."

What right did the grantee acquire under the lease? Merely the right to use and occupy so much of the surface of the land as was necessary to explore the premises for oil and gas, and to take therefrom these products as long as the same were found in paying quantities; not the right to the exclusive possession of the premises or to maintain an action therefor. A failure to find either oil or gas did not give the grantee the right to rescind the contract or to recover damages.

Webster's International Dictionary defines things potential as, existing in possibility, not in actuality; possible as opposed to actual; latent.

Counsel for defendant in error cite authorities from other jurisdictions, which they claim support their contention. But they shed but little, if any, light upon the construction to be placed upon the act, supra, defining income.

We are clearly of the opinion that the construction placed upon the same by the State Auditor, the plaintiff in error, was correct;

and the construction placed upon the same by the trial court was erroneous.

The judgment of the trial court is, therefore, reversed, and the cause remanded, with direction to further proceed not inconsistently with the views herein expressed.

HARRISON, C. J., and McNEILL, KENNAMER, and NICHOLSON, JJ., concur.