**BERG et ux. v. COMMISSIONER OF INTERNAL REVENUE.**

Court of Appeals of District of Columbia. Submitted November 9, 1928. Decided June 3, 1929.

Petition for Rehearing Denied June 26, 1929.

No. 4697.

James H. J. Sykes, of Washington, D. C., for appellants.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, L. W. Scott, and H. R. Gamble, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This proceeding is brought by appellant taxpayers for the review of a decision of the Board of Tax Appeals reported in 6 B. T. A. 1287, which affirms a deficiency in the income tax liability of appellants as determined by the Commissioner of Internal Revenue. The return was made for the year 1922 under the Revenue Act of 1921 (42 Stat. 227).

The income of appellants herein involved was derived from certain oil and gas leases upon lands owned by them in fee, and they claim that the income was received as a consideration for the sale of the oil and gas in and under the leased premises. They claim that it should be taxed as gain derived from the sale of capital assets at the limited rate provided by section 206 of the act, and not as ordinary income at the rates provided by sections 210 and 211. The Commissioner of Internal Revenue, however, held that the receipts were rents taxable as ordinary income under sections 210 and 211 of the act. This resulted in the determination of a deficiency in the tax liability of appellants for the year 1922 in the sum of $10,655.92. The Board of Tax Appeals sustained this determination.

The term "capital gain" is defined by section 206 of the act as meaning "taxable gain from the sale or exchange of capital assets." The term "capital assets," as used in the section, is defined as meaning property acquired and held by the taxpayer for a certain period for profit or investment, whether or not connected with his trade or business.

The oil and gas leases in question are similarly drawn. In each of them it is recited that the lessor, in consideration of a cash payment, and of the covenants following, does grant, convey, demise, and lease unto the lessee a certain described tract of land, for the sole and only purpose of mining and operating for oil and gas, and for laying pipe lines, etc., to produce, save, and take care of such products. It is provided that the lease shall remain in force for a specified term, and as long thereafter as oil or gas, or either of them, is produced from the land by the lessee. The lessee is to deliver to lessor one-eighth of all oil produced and saved from the leased premises, and to pay a certain sum annually for all gas used off the premises. If no well is commenced on the land within a specified time, or within 12 months after the first well is drilled, should it prove to be a dry hole, the lease shall terminate, unless the lessee makes certain payments which shall be credited as rentals.

The sole point at issue in this appeal is whether the consideration received by appellants under the oil and gas leases aforesaid falls within the classification of gain from the sale of capital assets, within the sense of the statutory definition of that term; in other words, whether the leases constituted a sale of the minerals in situ in the land.

The reported cases upon this subject are not in accord, but the controlling authority is to the effect that such a lease is not a sale or conveyance of the minerals within the sense of the taxing statutes. It follows accordingly that the consideration received by appel-

lants from the lessees is not the purchase price paid by the latter for the oil and gas produced under the lease, but is rent or royalty paid for the development rights granted to the lessees thereby.

In Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, the Supreme Court dealt with mining leases which provided that the owners of the described lands demised the same to the lessees, exclusively, for the purpose of exploring for, mining, and removing the merchantable iron ore which might be found therein, for and during the periods named, usually 50 years. The lessees were given exclusive right to occupy and control the demised premises, and to erect all necessary buildings, structures, and improvements thereon. The lessees agreed to mine and ship a specified quantity of ore each year, or in default to pay a certain sum to lessors. The right was reserved by lessors to terminate the contract upon failure of the lessees to comply with the terms thereof.

The question arose in the case whether the moneys received by the landowners during the years in question in payment for iron ore, under the contracts covering the mineral lands, were gross income, or whether they represented, in whole or in part, the conversion of the investment of the owners from ore into money. The court held that the leases in question were not equivalent to sales of property, and that the moneys paid by the lessees to the owners were not converted capital, but rents or royalties, and as such were income, proper to be included in measuring their taxes under the Corporation Tax Law—citing Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285; Stanton v. Baltic Mining Co., 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546. Mr. Justice Day, in delivering the opinion of the court, cites with implied approval the cases of State v. Evans, 99 Minn. 220, 108 N. W. 958; Boeing v. Owsley, 122 Minn. 190, 142 N. W. 129, and State v. Royal Mineral Ass'n, 132 Minn. 232, 156 N. W. 128, Ann. Cas. 1918A, 145, which are to the effect that leases for the purpose of developing and working mines do not constitute a sale of any part of the lands,

and that the amounts stipulated to be paid by the lessees are rents.

In United States v. Biwabik Mining Co., 247 U. S. 116, 38 S. Ct. 462, 62 L. Ed. 1017, the Supreme Court had before it a lease whereby the defendant acquired the right for the term of 50 years and 3 months from the 1st day of May, 1898, to explore for, mine out, and remove the merchantable shipping iron ore which might be found upon the lands described in the lease upon the payment of a royalty of 30 cents for each ton mined. The expression "merchantable ore" was defined as including "all ores which grade 55 per cent. and above in metallic iron, regardless of other ingredients." The lessee contracted to mine and remove at least 300,000 tons of ore annually, or to make certain payments in default thereof. Any failure to keep or perform any of the covenants or conditions of the lease gave to the lessor the option to take immediate possession of the premises. The deposit of ore on the leased premises was of such a character that its quality and quantity were capable of determination with extraordinary accuracy by drilling and shafts, and the defendant had calculated the tonnage remaining on the land at the time in question as 6,874,695 tons, all of which could be easily removed within the term of the lease.

The court held that such a lease was not a conveyance of the ore in place, although the latter could be measured with substantial accuracy, but was a grant of the privilege of entering upon, discovering, and developing and removing the minerals from the land, and that the lessor's income from such operations was subject to taxation under the Corporation Tax Act of August 5, 1909.

The present case, in our opinion, is governed by those just cited. We hold accordingly that the income of appellants under the leases in question was received as rent or royalty, and not as the purchase price of the oil or gas produced from the lands by the lessees. The receipts, therefore, were not to be taxed as gains from the sale of capital assets, but as ordinary income under the Revenue Act of 1921.

The decision of the Board of Tax Appeals is affirmed, with costs.