**ALEXANDER, Collector of Internal Revenue, v. KING.** *

**SAME v. RUZEK.**

**Nos. 303–306.**

Circuit Court of Appeals, Tenth Circuit.

Jan. 2, 1931.

Rehearing Denied Feb. 12, 1931.

*Certiorari denied 51 S. Ct. ——, 75 L. Ed. ——.

T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellant.

Harry O. Glasser, of Enid, Okl., for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

These four appeals present the same question: The taxpayers own royalty interests under ordinary oil and gas leases; during the taxable years, they received their contract share of the oil produced and have sold it. Are the proceeds of such sales taxable as ordinary income, or are they taxable as capital gains arising from the sales of capital assets held by the taxpayers for more than two years? The trial court held to the latter view, and the collector has appealed.

Helene Walker King filed three suits against the collector, one to recover taxes paid by her for the year 1925, one for the year 1926, and one for the year 1927. She alleged that the taxes so paid arose out of the sale of oil and gas produced from three tracts of land, on which lands and the oil and gas so produced her right was acquired for profit more than two years prior to January 1, 1925; that such oil was not a part of her stock in trade, nor was it held by her primarily for sale in the course of her trade or business; that the oil and gas was produced in the course of development under three leases; the plaintiff and/or her husband owned two of the tracts of land, and she and her husband were the lessors, the plaintiff owning, during the taxable years, one-half of the one-eighth royalty interest therein; the third tract was owned by one Schroeder and/or his wife, and they were the lessors, the plaintiff having acquired, in 1920, one-thirteenth of the lessor's one-eighth interest therein. These leases are, in substance, the same, and grant, let, and lease, for the period of five years or as long thereafter as oil or

gas is produced therefrom, the land described "for the sole and only purpose of mining and operating for oil and gas" and purposes incidental thereto. In consideration whereof, the lessee agreed to "deliver to the credit of the lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises." A cash rental was stipulated for gas used off the premises; there are other covenants unimportant here; the royalty right is without burden or obligation upon plaintiff's part. The plaintiff then alleges that the collector wholly computed her tax in conformity with sections 210 and 211 of the Revenue Acts of 1924 and 1926 (26 USCA §§ 951 note, 952 note), and denied to her the election of paying the 12½ per cent. of the capital net gain provided by section 208 (26 USCA § 939 note). She filed a claim for refund of the difference in tax, and upon its disallowance brings these suits. Plaintiff's recomputation of the tax is attached to her petition, which discloses that she returned the full sale price of oil sold, and deducted therefrom, not the cost to her, or the March 1, 1913, value, of the capital asset alleged to have been sold, but deducted 27½ per cent. of the sale price as depletion.

A general demurrer to the petition was filed in one of the cases, argued and overruled. Answers by way of general denials were filed, and the cases were submitted on stipulations which the trial court treated as admitting the allegations of the petitions. The stipulations only admit that the taxes were assessed under sections 210 and 211, and that, if they are legally calculable under section 208, there was an overpayment in sums stated. The stipulations do not admit the income arose as alleged. These records are carelessly prepared; the collector filed general denials without admitting the citizenship of plaintiff, his own official capacity, the ownership of the royalty interests, or the sources of the income. The cases were tried on stipulations which cover none of the essential facts except the amount recoverable. But, since the trial court and the parties treat the allegations of the petitions as admitted, and since it is important that the law be determined, we take the petitions as true.

In No. 306, Anna Ruzek had owned the land from which the oil was produced since 1905, and she was the lessor under a lease substantially identical with those above described. She sues to recover taxes paid for the year 1923, and her case is governed by the corresponding sections of the act of 1921.

In her case, a demurrer was filed and overruled, an answer was filed, and the same stipulation made as above set out.

Prior to 1921, gain realized from the sale of capital assets was treated as all other income, and subject to the same tax rates. The tax rates were high in the upper surtax brackets, and the gain from such sales often reached into such brackets. Because of such high rates, sales were not made and business was stagnating. Accordingly, the Ways and Means Committee reported out section 206 of the Revenue Act of 1921, 42 Stat. 232 (section 208 in the Revenue Acts of 1924 and 1926 [26 USCA § 939 note]) to relieve this situation, and in explanation thereof stated:

"The sale of farms, mineral properties, and other capital assets is now seriously retarded by the fact that gains and profits earned over a series of years are under the present law taxed as a lump sum (and the amount of surtax greatly enhanced thereby) in the year in which the profit is realized. Many such sales, with their possible profit taking and consequent increase of the tax revenue, have been blocked by this feature of the present law. In order to permit such transactions to go forward without fear of a prohibitive tax, the proposed bill, in section 206, adds a new section (207) to the income tax, providing that where the net gain derived from the sale or other disposition of capital assets would, under the ordinary procedure, be subjected to an income tax in excess of 15 per cent, the tax upon capital net gain shall be limited to that rate. It is believed that the passage of this provision would materially increase the revenue, not only because it would stimulate profit-taking transactions but because the limitation of 15 per cent is also applied to capital losses. Under present conditions there are likely to be more losses than gains."

Section 208(a), 26 USCA § 939 note, provides that the term "'capital gain' means taxable gain from the sale or exchange of capital assets"; and "the term 'capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business."

Section 208(b), 26 USCA § 939 note, provides that—

"In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected, and paid, in lieu of the taxes imposed by sections 951 and 952, a tax determined as follows: A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 951 and 952, and the total tax shall be this amount plus 12½ per centum of the capital net gain."

Section 210 provides for the levy of the normal tax on income, and 211 for the levy of the surtax. Section 214 (26 USCA § 955) authorizes the allowance of certain deductions from income, and included therein is the following:

"In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the commissioner, with the approval of the Secretary. In the case of leases the deduction allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

Section 204(c), 26 USCA § 935, provides that the basis upon which depletion is to be allowed shall be the same as is provided for the purpose of determining gain or loss upon sale, with certain exceptions; in 1926, the section was amended by providing that in case of oil or gas wells the allowance for depletion shall be 27½ per cent. of the gross income, but not to exceed 50 per cent. of the net income from the property, nor be less than it would be if computed without reference to this paragraph.

The position of the plaintiffs is that the oil which they sold was property which they had held for more than two years, and thus is within the definition of "capital assets" in section 208, and that, in truth and fact, the oil is a part of the substance of the land and is limited in amount, and when they sell it, even in installments, they are parting with a part of their capital. The collector asserts that the moneys realized by a royalty owner from the operation of an oil property is ordinary income, and not within either the letter or the spirit of the exception contained in section 208; that the plaintiffs did not own the oil until it was reduced to possession, which took place within the two-year period fixed by the statute; that, prior to reduction to possession, all they owned was an incorporeal right to reduce to possession, which right was not sold during the taxable year, and the sale of which plaintiffs do not allege was the source of the income. The collector further contends that the returns of the plaintiffs do not disclose either the cost or value of the properties sold, and thus do not disclose a capital gain; and, furthermore, that the plaintiffs deducted 27½ per cent. as a depletion allowance, which is a proper deduction from income but not from a capital gain. The collector further asserts that, by binding analogies, the question has been determined by the Supreme Court of the United States.

Plaintiffs rely largely upon the two decisions of the Board of Tax Appeals upon which the trial court rested its opinion. The first is Murphy v. Commissioner, 9 B. T. A. 610. Murphy owned land in Arkansas, upon which he made divers oil and gas leases. In addition to the one-eighth royalty reserved in the leases, he received a cash consideration, or bonus, of $52,062.70 for their execution. He then transferred, by warranty deed, an undivided one-half interest "in and to all of the oil, gas and other minerals" under his land, subject to the outstanding leases, the deed reciting an intention to convey "one-half of the one-eighth royalty to come to the lessors in the leases above described." For this transfer he received $12,925. Murphy claimed that both sums should be taxed as capital gain under section 206 of the Revenue Act of 1921. The Board held that the bonus was not capital gain, following Berg v. Commissioner, 6 B. T. A. 1287, but held that the consideration received for the warranty deed was a capital gain. This decision lends no support to the claim of plaintiffs, for Murphy sold outright one-half of his reserved royalty, which represented the landowner's property right in the oil and gas. In the cases at bar, the taxpayers retain that property right, and the income in question is their return for the use thereof. The distinction is similar to that between the proceeds from the sale of a farm, and the proceeds from a rental on shares.

The other case relied on is Reynolds v. Commissioner, 10 B. T. A. 651. The facts are identical with the Murphy Case, and the decision the same. The Board of Tax Appeals has, however, decided the precise question here involved, since the decision of the court below. The case is Ferguson v. Commissioner, 20 B. T. A. 130. The taxpayer owned the land and received a bonus for the execution of oil leases in the years 1922,

1923, and 1924. During each of those years, and in 1925, he received a large income from the "rentals and royalties" reserved in such leases. The Board referred to its prior decisions, and the decisions of the Supreme Court hereafter discussed, and held that neither the income from royalty reserved nor the cash bonus was a capital gain within the intendment of section 206. The Court of Appeals of the Fifth Circuit reversed this decision as to the bonus, but affirmed it as to the question here involved, the royalties from operations. Ferguson v. Commissioner (C. C. A. 5) 45 F. (2d) 573.

▮ The petitions allege that the income arose from "the sale of oil and gas produced" which had been owned by them for more than two years. Plaintiffs did own the land, or mineral rights therein, for more than two years; but did they own the oil thereunder until it was reduced to possession, which was within two years? The answer must be found in the decisions of the Supreme Court of Oklahoma. Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. ——; Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. ——. The Oklahoma decisions are in complete harmony with, and rely for their authority upon, the decision of the Supreme Court of the United States in Ohio Oil Company v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 583, 44 L. Ed. 729. The leading Oklahoma case is that of Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 89, 3 A. L. R. 352, in which the Supreme Court of Oklahoma defined the rights of landowners to oil and gas underneath their land. The court said, in part:

"By virtue of such ownership they had, on account of the 'vagrant and fugitive nature' of the substances constituting 'a sort of subterranean ferae naturae' * * * no absolute right or title to the oil or gas which might permeate the strata underlying the surface of their land, as in the case of coal or other solid minerals fixed in, and forming a part of, the soil itself. * * * But with respect to such oil and gas, they had certain rights designated by the same courts as a qualified ownership thereof; but which may be more accurately stated as exclusive right, subject to legislative control against waste and the like, to erect structures on the surface of their land, and explore therefor by drilling wells through the underlying strata, and to take therefrom and reduce to possession, and thus acquire absolute title as personal property to such as might be found and obtained thereby. This right is the proper

subject of sale, and may be granted or reserved. * * * The right so granted or reserved, and held separate and apart from the possession of the land itself, is an incorporeal hereditament; or more specifically, as designated in the ancient French, a profit a prendre, analogous to a profit to hunt and fish on the land of another."

Turning then to the rights granted under a lease similar to the ones here involved, the court said:

"In other words, it was a grant of the exclusive right, for the time specified, to take all the oil and gas that could be found by drilling wells upon the particular tract of land, with the accompanying incidental right to occupy so much of the surface as required to do those things necessary to the discovery of and for the enjoyment of the principal right so to take oil or gas. No more nor greater right, except perhaps as to duration, with respect to oil and gas, could be granted. Although there had been in terms a purported conveyance of all the oil and gas in the place, yet, by reason of the nature of these substances, no title thereto or estate therein would have vested, but only the right to search for and reduce to possession such as might be found; and when reduced to possession, not merely discovered, title thereto and an estate therein as corporeal property would vest."

In Carter v. Rector, 88 Okl. 12, 210 P. 1035, 1037, the question was whether a bonus of $300,000 paid for a lease on producing property was income, or a capital gain, under the Oklahoma Income Tax Law. The court held it was income which did not arise from conversion of a capital asset; that a conversion or sale of oil or gas "can only be accomplished when in place, by the sale of the land containing it." To the same effect, on the same facts, see Carter v. McCauley, 97 Okl. 255, 225 P. 527.

Rich v. Doneghey has been repeatedly followed in Oklahoma. Dunlap v. Jackson, 92 Okl. 246, 219 P. 314, Dill v. Rockwell, 94 Okl. 25, 220 P. 620, and by the Eighth Circuit Court of Appeals in an Oklahoma case, Priddy v. Thompson, 204 F. 955, and it is in accord with the decisions of the Supreme Court of the United States in Ohio Oil Company v. Indiana, supra; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160, Oklahoma v. Kansas Nat. Gas Co., 221 U. S. 229, 31 S. Ct. 564, 55 L. Ed. 716, 35 L. R. A. (N. S.) 1193, and Walls v. Midland Carbon Co., 254 U. S. 300, 41 S. Ct. 118, 65 L. Ed. 276.

The Ohio Oil Company Case is the leading case on this subject; the distinction between oil and gas and coal or ore is discussed, and the court thus concludes as to the rights of surface owners to oil or gas underneath their land:

"Without pausing to weigh the reasoning of the opinions of the Indiana court in order to ascertain whether they in every respect harmonize, it is apparent that the cases in question, in accord with the rule of general law, settle the rule of property in the state of Indiana to be as follows: Although in virtue of his proprietorship the owner of the surface may bore wells for the purpose of extracting natural gas and oil until these substances are actually reduced by him to possession, he has no title whatever to them as owner. That is, he has the exclusive right on his own land to seek to acquire them, but they do not become his property until the effort has resulted in dominion and control by actual possession."

The Supreme Court of California has recently explored the same question and reached a conclusion in accord with Rich v. Doneghey, and Ohio Oil Company v. Indiana. People ex rel. Stevenot v. Associated Oil Company et al. (Sup.) 294 P. 717; Bandini Petroleum Company v. Superior Court (App.) 293 P. 899. The Supreme Court of Kansas follows Ohio Oil Company v. Indiana, and in Bellport v. Harrison, 123 Kan. 310, 255 P. 52, held that—

"The ordinary and legal meaning of the word 'royalty,' as applied to an existing oil and gas lease, is the compensation provided in the lease for the privilege of drilling and producing oil and gas, and consists of a share in the oil and gas produced. It does not include a perpetual interest in the oil and gas in the ground."

Authorities might be multiplied, but Rich v. Doneghey exhausts the prior Oklahoma decisions; Ohio Oil Company v. Indiana cites many authorities then existing; and in the Stevenot and Bandini Cases, the California Supreme Court has gathered the recent cases from oil-producing states. Further citation here would duplicate work already well done.

From these authorities the conclusion is clear that the plaintiffs did not own the oil before it was reduced to possession; their ownership of the oil arose within the two-year limitation of the statute, and they are not entitled to exercise the election afforded by section 206 of the Revenue Act of 1921, or by section 208 of the 1924 and 1926 acts.

It is true that, through ownership of the land, they owned a property interest in the oil and gas, the right to search for and appropriate, clearly defined in the above cases and aptly described by Judge Phillips in his dissenting opinion in Leydig v. Commissioner (C. C. A. 10) 43 F.(2d) 494, 497, as "a species of incorporeal hereditament." But such right was not sold, as was done in the Murphy and Reynolds Cases, supra, but retained. Plaintiffs argue that, by the making of a lease, they in effect sold their right to explore for a consideration payable in installments, just as much as one who sells his royalty interest for a present consideration. But the difference is that between an outright sale and a lease for a term. A landowner has the incorporeal right to search for and take described in the authorities cited. He can exercise that right in person, or through another on such terms as are agreeable to him and his lessee. But in either event he exercises his right. He can sell the right, in which event he has parted forever with it. Royalty is compensation for an exercise of the right. Again, the difference is between the sale of a farm, and a contract transferring the right to use it for a term. Furthermore, the cases of plaintiffs are founded on the sale of oil and gas, and not the sale of a right to explore.

While the question presented seems not to be difficult on principle, the case of Ferguson v. Commissioner, supra, is the only case directly in point; but there are other cases which present close analogies. Under the Act of June 28, 1906 (34 Stat. 539), which dealt with the Osage Tribe of Indians, the mineral rights were reserved for the use of the tribe, but the income therefrom was distributable to the individual members of the tribe. In Work v. Mosier, 261 U. S. 352, 43 S. Ct. 389, 391, 67 L. Ed. 693, the question arose whether the bonuses paid for oil leases should be treated as property reserved for the use of the tribe, or as income therefrom. The question was thus presented of whether a bonus was a sale of mineral rights, or income from the use of those rights. The Supreme Court held, subject to conditions not pertinent here, that the individual Indian could require a distribution of these bonuses, and said:

"The bonus which was the result of bidding for desirable and profitable oil and gas leases secured for the members of the Osage Tribe the just value of the use of their property which the fixing of royalties in advance by the President was not adapted to give them. It was in effect a supplement to the

royalties already determined. It was really part of the royalty or rental in a lump sum or down payment. We do not see how it can be classified as anything else. It was income from the use of the mineral resources of the land. Of course, it involved a consumption and reduction of the mineral value of the land, but so does a royalty. This is an inevitable characteristic of income from the product of the mine. What was intended to be distributed to the members of the tribe was the income from the mineral deposits in their lands, and the bonus was part of that. Doubtless Congress had in mind regular annual or quarterly equal payments when it used the word 'royalties,' and did not anticipate such large down payments. But in the unexpected event, we must decide under what head the bonus is to be treated, whether as capital or income, and it seems clear to us that, in view of the entire statute, it is more aptly described by the latter term."

Again, the Eighth Circuit Court of Appeals and the Court of Appeals of the District of Columbia have held that the cash consideration or bonus received in consideration of the execution of an oil lease is not a capital gain within section 208. Certiorari was denied in both cases. Burkett v. Commissioner, 31 F.(2d) 667; Id., 280 U. S. 565, 50 S. Ct. 25, 74 L. Ed. 619; Berg v. Commissioner, 33 F.(2d) 641; Id., 280 U. S. 598, 50 S. Ct. 69, 74 L. Ed. 644. The Court of Appeals of the Fifth Circuit held to the contrary, in Ferguson v. Commissioner, supra, without referring to the Berg and Burkett Cases. The Ferguson Case is distinguishable because, as the court held in the opinion, it is settled law in Texas that an oil and gas lease "vests a fee title in the minerals themselves." But counsel for plaintiffs, in the cases at bar, does not question the soundness of the rule announced in the Berg and Burkett Cases; and, if that rule be sound, which we are not called upon to decide, certainly no rational distinction can be drawn between that part of the consideration for a lease which is paid in advance, and that part which is paid in installments. Both are parts of the consideration for a limited grant of the owner's incorporeal right in and to the oil underneath his land. That the bonus is paid in cash, and the subsequent rental in oil readily convertible into cash, is a distinction without a difference. The cash consideration paid in advance has more, if anything, of the aspect of a sale of a capital asset, than does the revenue derived from operations.

Pertinent and persuasive authority is found in the line of cases decided by the Supreme Court of the United States, dealing with the operation of mines of minerals in place, such as iron or coal. Here again, the cases are stronger against plaintiffs, for the rights of the surface owner to ore in place are more tangible than his right to fugacious minerals. The Supreme Court has dealt with nearly all the aspects of such mining operations, and has steadfastly declined to treat them as conversions of capital assets. In Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285, the taxpayer mined gold-bearing ore from beneath its own lands. The value of the ore recovered, less the cost of recovery, was treated as income under the Corporation Tax Act (36 Stat. 11, 112, c. 6). The taxpayer sued to recover the tax, claiming that by its mining operations it simply converted capital represented by real estate into capital represented by cash, and such conversion did not result in income; that mining of ore necessarily resulted in a waste of the estate; that, if its profit be treated as income, it should be offset by a charge to depreciation of the value of the ore in place; that the enjoyment of its assets and the wasting thereof proceeded pari passu. But the court held at page 417 of 231 U. S., 34 S. Ct. 136, 142:

"We have no difficulty, therefore, in concluding that the proceeds of ores mined by a corporation from its own premises are to be taken as a part of the gross income of such corporation. Congress no doubt contemplated that such corporations, amongst others, were doing business with a wasting capital, and for such wastage they made due provision in declaring that from the gross income there should be deducted (inter alia) 'all losses actually sustained within the year,' including 'a reasonable allowance for depreciation of property, if any,' etc."

Stanton v. Baltic Mining Co., 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546, involved the Income Tax Law of 1913. The court approved of the doctrine of the Stratton Case, and held that the proceeds from mining operations—the value of the ore less the cost of recovery—was income, and that the tax was not a property tax because the statutory allowance for depreciation might be inadequate.

Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, involved the Corporation Tax Law. The taxpayer owned large tracts of land under mining leases, the usual term of which was 50 years, and received large sums as royalties. The collector treated such royalties as income and made no allowance for depletion. The

Court of Appeals (219 F. 31) held that the leases were such in name only, and were in fact conveyances of the ore in place; that the royalties were not income, but mere conversions of capital. The Supreme Court reversed the case; it held that under the decisions of Minnesota the royalties from mining leases constitute rents and profits from the land, the compensation paid by the lessee for the privileges granted by the lease. Independently of Minnesota law, the court held, at page 521 of 242 U. S., 37 S. Ct. 201, 206:

"We think that the payments made by the lessees to the corporations now before the court were not in substance the proceeds of an outright sale of a mining property, but, in view of the terms of these instruments, were in fact rents or royalties to be paid upon entering into the premises and discovering, developing, and removing the mineral resources thereof, and as such must be held now, as then, to come fairly within the term 'income' as intended to be reached and taxed under the terms of the Corporation Tax Act."

In United States v. Biwabik Mining Co., 247 U. S. 116, 38 S. Ct. 462, 62 L. Ed. 1017, under the Corporation Tax Law, the lessee undertook to deduct from its gross income, the value of the ore in place. This was held to be erroneous, since the lease did not convey the ore in place. The case of Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660, arose under the Income Tax Law of 1916, which authorized a deduction from income of a reasonable allowance for depletion of mining properties. The court held that, while the mining lease did not pass title to the ore in place, it did convey a property interest which was subject to exhaustion, and to which the depletion allowance was applicable. The court, in substance, approved of the ruling of the collector in the present instance; that is, treating the proceeds from mining operations as ordinary income, allowing a deduction for depletion to care for the waste of the estate.

Plaintiffs distinguish these decisions of the Supreme Court of the United States because the royalties were payable in cash instead of in kind. The Supreme Court rests its decisions on no such narrow ground, and in the Stratton Case no cash rental was involved. What difference in the quality of the transaction exists on account of the medium in which the rental is paid? A landowner who rents his farm on shares should not be treated differently than one who rents for cash. It is true that most of these cases dealt with the Corporation Tax Act, as pointed out in the Ferguson Case, supra; but the excise levied by that act was measured by income, and not by the sale price of properties owned. And, as we read these decisions, they hold that the profit from mining operations is income from the use of, as distinguished from a sale of, a capital asset.

Section 206 of the Act of 1921 and section 208 of the Acts of 1924 and 1926 apply only where there has been a conversion of capital assets by a sale or exchange. But the Supreme Court has established the rule that the revenues derived from mining royalties do not arise from a conversion of capital assets. No reason appears why an exception should be made where the minerals happen to be oil and gas.

It follows that the judgments appealed from are erroneous. Since the cases were tried on stipulations, there is no occasion for a new trial. Howbert v. Penrose (C. C. A. 10) 38 F.(2d) 577, 68 A. L. R. 820, and cases therein cited. The judgments are reversed in all of the cases, and the trial court directed to enter judgments for the defendant.

Reversed.