HENRY E. GOURD, Appellant, *v.* THOMAS HEALY, Respondent.

Sale — executory contract of sale — remedy of vendor if vendee refuses to take goods at time fixed for delivery thereof — validity of sale of goods to be taken from larger quantity of same kind.

1. When a vendee of personal property, under an executory contract of sale, refuses to complete his purchase at the time fixed, the vendor may keep the property for the vendee and sue for the purchase price.

2. In order to make a valid sale of articles of personal property, each of which has a distinct and separate identity, such articles must, if not delivered at the time of the sale, be so designated that possession can be thereafter taken by the purchaser without any further act on the part of the seller. It is different, however, when the thing sold is to be taken in a specified quantity, or bulk, from a larger mass of which it is a part; and, hence, there may be a valid sale, to be delivered at a subsequent time, of a designated number of cases of a specified kind and vintage of wine, which is part of a larger quantity of the same kind and vintage of wine stored in a wine cellar, although such cases are not segregated from the mass of which they are a part.

3. On examination of the facts with reference to a contract for the sale and purchase of wines and extensions of time for delivery, *held*, that there was a valid contract for the sale of the wines to be delivered in future. That it was a question of fact for a jury whether the time was extended beyond a certain date, and if so whether the time given to defendant to fulfill his contract was reasonable.

*Gourd* v. *Healy*, 143 App. Div. 928, reversed.

(Argued October 30, 1912; decided November 19, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 14, 1911, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank D. Wynn* and *Hiram Thomas* for appellant. The defendant's recognition and approval of the writings of plaintiff embodying the terms of the agreement constituted an acceptance whereby those writings became the contract between the parties. (*Watkins* v. *Rymill*, L. R. [10 Q. B. D.] 178; *Smith* v. *Hughes*, L. R. [6 Q. B. D.] 597; *Phillip* v. *Gallant*, 62 N. Y. 256; *Sellers* v. *Greer*, 172 Ill. 549; *Vogel* v. *Pekoe*, 157 Ill. 339; *Short* v. *Kieffer*, 142 Ill. 258; *Bohn Mfg. Co.* v. *Sawyer*, 169 Mass. 447; *Russell* v. *Allerton*, 108 N. Y. 288; *Wright* v. *Reusens*, 133 N. Y. 298; *Smith* v. *Malleson*, 148 N. Y. 241; *Robertson* v. *Ongley Elec. Co.*, 146 N. Y. 20.) If the buyer, in an executory contract of sale, refuses to take and pay for the goods when the seller offers to deliver them, the seller may retain the goods for the benefit of the buyer and recover the purchase price. (Williston on Sales, § 562; *Dustan* v. *Andrews*, 44 N. Y. 72; *Moore* v. *Potter*, 155 N. Y. 481; *Ackerman* v. *Rubens*, 167 N. Y. 405; *Mason* v. *Decker*, 72 N. Y. 595; *Hayden* v. *Demets*, 53 N. Y. 426; *Butler Bros.* v. *Hirzel*, 87 App. Div. 462; 181 N. Y. 520; *Horst* v. *Montauk Brewing Co.*, 118 App. Div. 300; 192 N. Y. 555; *Van Brocklen* v. *Smeallie*, 140 N. Y. 70; *Cragin* v. *O'Connell*, 50 App. Div. 339; 169 N. Y. 573; *Dunlop* v. *Grote*, 2 C. & K. 153.) The buyer's refusal to take and pay for the goods dispenses with the necessity of delivery or tender of delivery, and readiness and willingness to deliver are enough to support the seller's right of action. Having refused to pay for the goods when payment was due, and having refused not only to give shipping instructions but to accept the goods, defendant has waived delivery and tender and is liable for the purchase price. (*Shaw* v. *R. L. Ins. Co.*, 69 N. Y. 286; *Nelson* v. *P. F. P., etc., Co.*, 55 N. Y. 480; *Lawrence* v. *Miller*, 86 N. Y. 131; *Paine* v. *Brown*, 37 N. Y. 227; *Windmuller* v. *Pope*, 107 N. Y. 674; *Scott* v. *Miller*, 114 App. Div. 6; *Duryea* v. *Bonnell*, 18 App. Div. 151; *Levy* v. *Glassberg*, 92 N. Y. Supp. 50; *Howe* v.

*Morre,* 14 N. Y. Supp. 236; *Wharton & Co.* v. *Winch,* 140 N. Y. 287; *Butler Bros.* v. *Hirzel,* 87 App. Div. 462; 181 N. Y. 520.) Even if the contract be construed as not fixing a definite time for performance, or if the parties had waived performance in October, 1907, the action may still be maintained, since defendant was bound to order and pay for the goods within a reasonable time. Whether a reasonable time had elapsed was a question for the jury. (*Pope* v. *T. H. C. & Mfg. Co.,* 107 N. Y. 61; *Lawson* v. *Hogan,* 93 N. Y. 39; Williston on Sales, § 457; *Cragin* v. *O'Connell,* 50 App. Div. 339; 169 N. Y. 573; *Sanborn* v. *Benedict,* 78 Ill. 309; *L. V. Coal Co.* v. *Curtis,* 22 Ill. App. 394; *Lewis* v. *Tipton,* 10 Ohio St. 88; *Howe* v. *Woodruff,* 21 Wend. 640; *Black* v. *Bachelder,* 120 Mass. 171; *Wright* v. *Bank of Metropolis,* 110 N. Y. 237.)

*M. E. Kelley* for respondent. The promises of the seller to deliver in New York, and of the buyer to receive and pay for the goods there, were mutual, dependent promises, and neither side could sue until he had put the other in default. (*Delaware Trust Co.* v. *Calm,* 195 N. Y. 231; 29 Am. & Eng. Ency. of Law [2d ed.], 689; *Pope* v. *T. H., etc., Co.,* 107 N. Y. 61; *Dunham* v. *Mann,* 8 N. Y. 508; *Lester* v. *Jewett,* 11 N. Y. 453; *Gross* v. *Ajello,* 132 App. Div. 25.) There was no bargain and sale of these goods, because something remained to be done by the seller before title could pass to the buyer. (*Anderson* v. *Reed,* 106 N. Y. 333; *Lighthouse* v. *Third Nat. Bank,* 162 N. Y. 336; 24 Am. & Eng. Ency. of Law [2d ed.], 1049, 1050, 1054; Benjamin on Sales [7th ed.], 721, 722.) The goods were to be transported by the seller from France to New York and there delivered to the buyer, and as this had not been done an action for the purchase price would not lie. (*Gross* v. *Ajello,* 132 App. Div. 25; *Evans* v. *Harris,* 19 Barb. 416; *Hayden* v. *Demets,* 53 N. Y. 426; *Mason* v.

*Decker*, 72 N. Y. 595; *Westfall* v. *Peacock*, 63 Barb. 209.)

WERNER, J. This action, which has been twice tried, was brought to recover the purchase price of fifty cases of wine. The original complaint contained the usual averments where there has been a bargain and sale but no delivery, and the answer was in substance a general denial. At the first trial the court directed a verdict for the plaintiff. The judgment entered upon this direction was reversed by the Appellate Division upon grounds set forth in an opinion (137 App. Div. 323) which will be referred to further on. After this reversal the plaintiff obtained leave to serve a supplemental complaint in which there was nothing new except the allegation that the plaintiff had at all times since the commencement of the action kept good the tender set forth in the original complaint, and the defendant again interposed a general denial. At the second trial the complaint was dismissed at the close of the plaintiff's proofs, upon the ground that the plaintiff had not established a cause of action.

There is no dispute over the fact that on the 26th day of May, 1906, the plaintiff sold to the defendant fifty cases of wine at the agreed price of $740, which was to be billed November 1, 1906, at four months, thus fixing the 1st day of March, 1907, as the day of payment, and that meanwhile the plaintiff was to hold the wine subject to the shipping instructions of the defendant. The original contract rested wholly in parol, but it was supplemented by a written correspondence which materially modified its terms, and the question we have to decide is: What are the rights and obligations of the parties under the contract as thus modified?

The first writing which followed the oral contract was the plaintiff's letter of the same day (May 21, 1906), in which, after thanking the defendant for the order and stating the price of the wine, the plaintiff said: "I will

write to the shippers to hold this wine subject to your
future shipping instructions, and they will bill the goods
to you next November." It is conceded that at that time
the wine was in a cellar in Bordeaux, France, and was
part of a larger quantity which had not been divided.
The wine was billed to the defendant on November 1, 1906,
payable in four months, and in the bill there was the
statement that the wine is "lying in Bordeaux awaiting
your instructions." Thus the matter stood until March
25, 1907, when the parties had some conversation over the
telephone which was followed later in the day by a letter
from the plaintiff to the defendant in which the former
wrote: " In confirmation of conversation over the tele-
phone to-day, I send you a copy of my letter acknowledg-
ing the receipt of your import order etc. * * * *If
you will advise me what quantity you want brought from
Bordeaux, I will have the same come with other goods
for. me.*" To this the defendant replied, acknowledging
the receipt of the agreement and stating that his cellar
was still quite well stocked. Continuing, he said: " I
consider I made a great bargain in purchasing those wines
as they are very fine, *but if you could accommodate me
by carrying the same, and not have them delivered to me
until October 1907, this year, I will pay interest on same
from now on at the rate of six per cent for the invest-
ment of your money ;* by granting me that privilege you
will confer a favor." On the very next day (March 28,
1907) the plaintiff responded by writing: "I will be happy
to carry the merchandise until next October, interest to
be added on the value from the first inst." At this point,
therefore, the time of delivery and payment had been
pushed forward from March to October, but the original
stipulation that the defendant was to give shipping
instructions remained unchanged. Apparently nothing
further was done until November 7th, when the plaintiff
seems to have written a letter which is not in evidence. Its
import may be inferred, however, from the nature of the

defendant's reply dated November 8th, 1907, in which he writes: "Yours of November 7/07 at hand. In reference to Bordeaux wine I wish to say that I am not fully prepared to take it now. I will pay the interest till the amount is paid as agreed, and if you will send me a bill of it I will send you a check." The only reasonable inference to be gathered from this letter is that the defendant had been asked to take the wine, and his reply was a request for further time of uncertain duration. Again the plaintiff acquiesced and· on the next day (November 9, 1907) he sent to the defendant a bill ·dated November 1, 1906, payable in four months, with interest to be added from March 1st, 1907. The plaintiff's letter inclosing this bill requested a check in accordance with defendant's promise of November 8th. Another month passed when the plaintiff again wrote under date of December 4th, 1907, calling the defendant's attention to the bill which had been sent on November 9th at defendant's request, and expressing plaintiff's astonishment at not having received the defendant's check. The · letter also contained a reference to the fact that as the shippers had so long taken care of the goods without any expense to the defendant, it would be proper for him now to make a settlement of the bill, and it ended with another request for payment. To this the defendant replied on the next day (December 5, 1907), that he had previously written· that he could not then take the wine, but was willing to pay interest for the delay and had asked for a bill for the interest, but that his ·letter had evidently been misunderstood by the plaintiff. And he added: "I intend to take the wine later as soon as it is convenient and am willing to pay you interest till that time." The letter concludes with a request for a bill of the interest, and the suggestion that if this should prove unsatisfactory to the plaintiff he could cancel the defendant's order. On the next day (December 6, 1907) the plaintiff wrote to the defendant saying: "I certainly did not

understand your letter of the 8th as meaning that you only wished to pay the interest. * * * On November 7th I called your attention to the payment according to the agreement, and your letter of the 8th inst. followed, which I understood to mean, taking into consideration the previous correspondence as above mentioned, that you wanted a memorandum of what the interest amounted to, in order to pay it with the bill, so that you can imagine that your letter was very much of a surprise to me, inasmuch as you only desired to pay the interest and wanted the principal amount to run on, and *without your fixing any definite time to take the goods.* The wine might remain in Bordeaux till spring, but that would have nothing to do with the payment, as I settled for it a year ago." The letter continued with the suggestion that the defendant had been treated with great forbearance, and that the plaintiff, in order to get the matter closed, would take the defendant's check for the interest, and his note for three months for the principal. To this the defendant replied that if the proposition contained in his letter of December 5th was not agreeable to the plaintiff the latter could sell the wines. "If you wait my convenience," said the defendant again, "I will take the goods. Never issued notes and don't believe in them." On the 9th of December, 1907, the plaintiff again wrote to the defendant, saying: "*The question is not whether I can or cannot sell the wine held for your account in Bordeaux ; it is whether you have or have not purchased these goods at certain definite conditions.*" The letter continues at length to impress upon the defendant the unfairness of his attitude, and concludes with the statement: "I trust that you will recognize that my claim is quite justified, and will signify your willingness *to take the goods at a specified and early date.*" To this the defendant replied: "Relative to your letter about wines. Business with me was never so good. It occurs to me that there cannot be much doing

down your way from the drift of your letter." This was the defendant's final contribution to the correspondence. The plaintiff wrote several other letters, but they add nothing that is material to the controversy.

At this point the repetition of a few salient facts will help to understand the original contract as modified by the subsequent conduct of the parties. The original contract, as evidenced by the bill which was sent to the defendant on November 1, 1906, was that the wine "lying in Bordeaux awaiting your (defendant's) instructions," was to be delivered "duty paid dock N. Y." As no time was fixed within which the defendant was to give shipping instructions, it may be assumed that the plaintiff could have been compelled to wait for a reasonable time before he could insist that the defendant must take the goods. A somewhat similar condition existed with reference to the terms of payment. The contract was made in May, 1906, and plaintiff's agent testified that he then told the defendant that he could pay for the goods when he was ready; but, after that statement had been made to the defendant, he received from the plaintiff a letter stating that the goods would be billed November 1st, 1906, payable in four months; or March 1, 1907. This letter evoked no protest from the defendant, and we may, therefore, assume that there was no misunderstanding as to its terms. The goods were billed on November 1st, 1906. There the matter rested until the latter part of March, when the plaintiff sent to the defendant a copy of the bill and a request for shipping directions as to at least a part of the wine. The defendant, so far from objecting to the terms of the bill or denying the plaintiff's right to ask for shipping directions, requested the plaintiff to carry the goods until the following October, and promised to pay interest on the purchase price. To this the plaintiff acceded, and the matter ran on until November, when the defendant was again requested to take the wine and again he repeated his request for further time

and his promise to pay interest. During all this time, and down to the very end of the correspondence, he knew that the wine was in Bordeaux and that he had not given shipping instructions, although the contract required him to give them. When asked to take the goods, or at least to pay for them, he did not object to the form of the tender, but acquiesced in its sufficiency by asking for more time, not as a matter of right but entirely as a favor. If the goods had been in New York in the plaintiff's warehouse there can be no doubt that his repeated requests that the defendant take the goods would have constituted a good tender, and we do not think the situation is changed by the fact that the goods, or a part of them, were in Bordeaux. Had the defendant raised that objection, or had he given the plaintiff shipping directions as he was bound to do, the goods might have been sent for and tendered in bulk. The defendant not only failed to require such action on the part of the plaintiff, but he distinctly waived it by asking for further time and then refusing to take the goods when the extended time had expired. Defendant's counsel now argues that the defendant never refused to take the goods, but one has only to read the correspondence to become convinced that the argument is futile. The defendant's last word was in effect a flat refusal, for he ended his part of the correspondence without suggesting that he would ever be ready to take the wine.

It is contended, however, that the title to the wine never passed from the plaintiff to the defendant because at the time of sale and until the close of the correspondence in December, 1907, the wine had not been segregated from the larger mass of which it formed a part in an unidentified cellar in Bordeaux, France; and that is the position taken by the Appellate Division. What has been said concerning the tender of the goods seems to answer this contention. Even if it were true that the title to merchandise which forms part of a larger quantity

does not pass to the purchaser until it is separated from the mass, the dealings between these parties were such as to relieve the plaintiff from the duty of segregation. But this property was of a species in which there may be a transfer of title even when it remains an integral part of a larger bulk. Ordinarily, articles of personal property must, if not delivered, be so designated that possession can be taken by the purchaser without any further act on the part of the seller. That is the rule in the sale of a horse, a table, or any other article having a distinct and separate identity as the particular thing sold. It is different, however, when the thing sold is coal, wine, oil or wheat, which is to be taken in a specified quantity or bulk from a larger mass. Property may be acquired and held in many things which are incapable of more specific designation than a reference to their kind, quality or other general description. "Articles of this nature are sold, not by a description which refers to and distinguishes the particular thing, but in quantities, which are ascertained by weight, measure or count; the constituent parts which make up the mass being undistinguishable from each other by any physical difference in size, shape, texture or quality." (*Kimberly* v. *Patchin,* 19 N. Y. 330, 333.) Here the thing sold was wine described as Chateau Yquem of the vintage of 1901, and the quantity was to be thirty-five cases of quarts and fifteen cases of pints. Any fifty cases of this kind of wine in the specified number of quarts and pints would have answered the description in this contract. Upon the last trial it appeared that this wine was in the cellars of Schroeder and Schyler, Bordeaux, when the contract was made, and that it remained there until it was shipped to the plaintiff in April, 1910; and in view of the nature of the property and the dealings beween the parties, we think that is precisely the same as though the wine had been in the cellar of the plaintiff from the beginning.

If the contract, as modified by the dealings of the par-

ties, could be considered as definitely fixing the day on which the defendant was to take the wine, there would be no difficulty in deciding as matter of law that the defendant was in default, and that the plaintiff is entitled to recover in this action; for it is too well settled to require discussion that when a vendee of personal property under an executory contract of sale refuses to complete his purchase at the time fixed, the vendor may keep the property for the vendee and sue for the purchase price. (*Dustan* v. *McAndrew,* 44 N. Y. 72; *Moore* v. *Potter,* 155 N. Y. 481; *Ackerman* v. *Rubens,* 167 N. Y. 405.) It is not quite clear, however, whether this contract is to be treated as having been extended only to October, 1907, or whether it may be considered as having been extended indefinitely beyond that date. It is undisputed that the time for the delivery of the wine was in fact extended to October, 1907, at the defendant's request, and the course of dealing between the parties indicates that the time of payment was also regarded as deferred to that month. From that time forth the plaintiff apparently took the position that he was entitled to payment even though the delivery of the wine was still further postponed, and the defendant seems to have thought that he was under no obligation either to take the wine or pay for it until he got ready. Even if we treat the defendant's last communication as a refusal to take the wine, the correspondence still leaves it somewhat uncertain whether the time for delivery and payment had been extended only to October, 1907, or for an indefinite period. If it was extended only until October, the defendant was clearly in default in November when he was asked to take the wine and pay for it, and if, on the other hand, the correspondence and the conduct of the parties should be construed as having extended the time of delivery for an indefinite period, then the question would be whether the defendant had been given a reasonable time in which to comply with his part of the

28

contract. Although the facts as to this branch of the case are undisputed, it is possible that different inferences may be drawn from them, and we, therefore, think a jury should be asked to decide whether there was an extension of time beyond October 1st, 1907, and if so, whether the time given to the defendant was reasonable.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

GRAY, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur; CHASE, J., concurs in result; CULLEN, Ch. J., absent.

Judgment reversed, etc.