## STAMFORD EXTRACT MFG. CO. v. OAKES MFG. CO.

(Circuit Court of Appeals, Second Circuit. June 8, 1925.)

### No. 299.

**1. Sales ⊙�171212—Sale of wood out of larger quantity held not sale of fungibles, and title did not pass without delivery.**

Sale of wood to be selected by seller's agent or bailee out of larger quantity, *held* not sale of fungibles, under Personal Property Law N. Y. § 100, rule 1, or section 87, subd. 2, and title did not pass, under section 100, rule 5, or section 156, until after delivery, notwithstanding buyer was to send ship for goods and contract was in present tense.

**2. Sales ⊙�171170—That seller failed to deliver, because wood relied on was taken by another, held not risk that buyer was under.**

That seller failed to deliver, because wood relied on was taken by another, *held* not risk that buyer was under.

**3. Sales ⊙�17187(3)—Reasonable time for schooner to be sent for wood purchased held measured by difficulties encountered by buyer.**

Evidence *held* to show intent that buyer should use such expedition as it could, measured by difficulties encountered, in sending schooner for wood.

**4. Sales ⊙�171418(7)—Buyer held not required to repudiate contract for seller's delay before seller's inability to deliver was clear.**

Where buyer was to send for cargo of wood, he was entitled to wait with vessel until it was clear that seller could not deliver, in absence of seller's refusal to do so, and was not obliged to repudiate contract and buy elsewhere to minimize loss.

**5. Damages ⊙�171722—Extent of promisee's loss held not conclusive that he is entitled to damages.**

Mere notice of extent of promisee's loss is not conclusive that he is entitled to damages, but loss must be within promisor's undertaking.

**6. Damages ⊙�171723—Test of whether promisee's loss is within promisor's undertaking stated.**

Promisee's loss, to be recoverable, must be such that, had promisor been originally faced with its possibility, he would have assented to its inclusion in what he must make good.

**7. Sales ⊙�171418(14)—Seller, failing to deliver wood to vessel sent by buyer, held liable for demurrage.**

Seller, failing to deliver wood to vessel sent by buyer, *held* liable to buyer for demurrage.

In Error to the District Court of the United States for the Eastern District of New York.

Action by the Stamford Extract Manufacturing Company against the Oakes Manufacturing Company. Judgment for defendant, dismissing plaintiff's complaint, and giving judgment on defendant's counterclaims for $18,497.52, and plaintiff brings error. Affirmed.

Herman Goldman, of New York City (Elkan Turk, of New York City, and Harry G. Liese, of Brooklyn, N. Y., of counsel), for plaintiff in error.

Watson, Harrington & Sheppard, of New York City (Archibald R. Watson, Ralph O. Willguss and Raymond D. Thurber, all of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. This was an action at law for goods sold and delivered. The answer denied the sale and the plaintiff's title, and set up five counterclaims, among them one upon the breach of a contract of sale because of the plaintiff's default, demanding a return of part of certain sums paid on account and damages. At the conclusion of the plaintiff's evidence the court dismissed the complaint, and eventually took a verdict on the counterclaim.

The contract was in writing, and consisted of two letters, of which the substantial parts are as follows:

First, from the plaintiff to the defendant, on August 12, 1919: "We have sold you about 750 tons of Cape wood at $20 per ton down there, and it is divided as follows: About 550 tons of Cape Haiti and about 200 tons of Ft. Liberty. This will be all straight wood, and as we have been informed by our agent there it is the same kind and quality as we had at our factory yard which you purchased. We have written to various shipbrokers, and we hope in the course of a day or two we shall be able to give you some information in relation to your securing a vessel."

This the defendant accepted on August 13 and paid down $3,750 on account. The plaintiff, on August 15, after acknowledging the receipt of the payment, wrote as follows: "We have received answers from six vessel brokers, all saying that they will communicate with us the moment they have a vessel in sight. Our agent or representative, who attended to our wood in that part of the country is now up here, and a man who has charge of the storage yards is making a trip up here for a couple of weeks, and unless one or the other of them are down in the West Indies, I would not want to have a vessel loaded, as they might make a mistake and get in the wrong wood, so that under the circumstances

I think it might be well not to push a charter for immediate shipment."

The defendant, requiring the wood in New York, on September 23d, chartered a schooner of sufficient capacity, which arrived at Cape Haiti on November 26th. There she waited, and was never able to get more than 133½ or 149 tons of logwood; the exact amount is uncertain. The plaintiff had bought the wood of a native named Stephens, and supposed that it was stored in his two yards, where he was keeping it with other parcels awaiting delivery. The reasons for the failure of the schooner to get the wood were not wholly certain, but apparently what the plaintiff expected to deliver was taken by another person by persuasion or compulsion of Stephens. The last of the 149 tons being delivered on December 9th, the schooner waited until January 21st, when, receiving no more cargo, she sailed for Jamaica, and there loaded at higher prices. The complaint was dismissed, because the judge thought the sale did not pass title at once, and that the plaintiff was bound to deliver under the contract of sale. He allowed recovery on the counterclaims for the demurrage paid by the defendant under the charter party, and for the added cost of wood lifted in Jamaica. Various errors are charged in the conduct of the trial, which we consider separately.

[1] The plaintiff's theory is that the sale was of fungibles, and that the title passed to an aliquot share at once, under section 100, rule 1, and section 87, subd. 2, of the Personal Property Law (Consol. Laws N. Y. c. 41). Kimberly v. Patchin, 19 N. Y. 330, 75 Am. Dec. 334; Gourd v. Healy, 206 N. Y. 423, 99 N. E. 1099. In this we cannot agree. The letter of August 15, though strictly not a part of the contract, was assented to by the defendant, and showed beyond doubt that the parties did not think the sale one of fungibles, as defined in section 156. In no other way can the plaintiff's solicitude be explained, lest Stephens should give possession to the "wrong wood."

Among fungibles there are no right and wrong units. The evidence goes further, because from it appears as well that the seller reserved the right to supervise and control the surrender of possession of the goods, and that the buyer was not merely to come and get them. We may assume without deciding—as we do not—that the sale was of specified lots. Even so, they were mixed with other lots, and the buyer was not to have the right to go to the yards and take possession. He must have the assent either of Huestis, the seller's agent, or of Stephens, his bailee.

Delivery is defined, under section 156, as the "voluntary transfer of possession." It requires the assent of the seller to a change of possession, though it does not require him to move the goods. In the case at bar the assent, so reserved and made a condition on the buyer's possession, when given, constituted the transfer itself. The buyer could not have the wood till the seller had selected it; that is, the seller was to deliver, and the case is within section 100, rule 5.

While it is true that the statutory presumption readily yields, we think that the facts at bar fortify it. It seems to us most improbable that title should have been supposed to pass merely because words in the perfect tense were used. The wood was really quite unascertained and unascertainable by the buyer, and, as we have said, it was clearly not part of a mass of fungibles. How he was to get it, without just the appropriation which the seller reserved, it is impossible to see. In no real sense could he call it his, until the seller had taken further action. Quite apart from any presumptions, statutory or other, it seems to us contrary to every reasonable inference to suppose that the parties intended a sale in præsenti, which discharged the seller of any further risk. The complaint was rightly dismissed.

[2] Thus the plaintiff broke its contract in failing to make delivery, and an action lay on the breach. The suggestion that the goods had perished is wholly unsupported in the proof. So far as one may guess from the extremely unsatisfactory evidence, the trouble arose because of Stephens' irregular conduct in selling wood to two parties, one of them the plaintiff. Damon probably overbore him, and at any rate seized what wood there was. That was not a risk which the buyer was under. In any event, the question was one for the jury, and there was neither exception to the charge, nor request, which raised any excuse for nondelivery, if any there were.

[3] We come, therefore, to the supposed errors in the trial of the counterclaims. The first is that the buyer made a tardy tender of the schooner; the theory being that the vessel, whether in sail or steam, should have appeared within a reasonable time, measured, not by the difficulties which the buyer in fact experienced, but by what at the time when the contract was made the parties had had in contemplation. This is raised by the eighth request to charge. We think that the trial judge disposed of the matter properly in his charge. It is clear that the parties understood that it was likely to be difficult to get a vessel, and that the buyer was justified in

chartering a schooner. The letters of October 27th and 29th between the parties show that on question was then made of the employment of a schooner, which was not expected to arrive until November 15th. In fact, she arrived on November 26th, not an unreasonable delay considering the distance. Again, on February 20, 1920, the plaintiff, in speaking of the schooner's failure to lift a full cargo, raised no question of the time of her arrival. The contract itself foreshadows possible difficulties of transport. It seems to us, from this evidence, that the reasonable time in contemplation by the parties was to be fixed with an eye upon the defendant's opportunities, and that all that was meant was that, as the court charged, it should use such expedition as in fact it could.

[4] Next is the question of damages. The court distinctly charged that the measure of damages was the difference in value between the market price and the contract price at the place of delivery, Haiti, if there was a market price there—a question on which the evidence was in dispute. It was only in case the wood could not be had at Cape Haiti that the jury were to use the market prices in Jamaica. We can find no exception to this, nor any request which raises the point. The defendant was certainly entitled to lie at Cape Haiti until it was clear that the plaintiff would not deliver. The plaintiff had not refused delivery; Stephens might get more wood. When the defendant learned of the delay in December, it communicated with Huestis, and got him to go to Haiti to "straighten the matter out."

This was evidence of a continued purpose to perform, and, while the defendant might have repudiated the contract, it was not obliged to do so. It was only when, on January 10, 1920, the defendant learned of the impossibility of getting any more wood, that it first tried to get a cargo in Haiti, and thereafter sent the schooner to Jamaica on the 21st. Until that time the defendant was under no duty to buy wood elsewhere; the time to minimize its loss had not arrived. Huestis was clearly the plaintiff's agent. Not only was he so represented originally in the contract, but the plaintiff had sent him in October the money necessary to load the schooner. As appears from the letters of February 6 and February 20, he was throughout January, 1920, still attending to its affairs.

[5-7] The item of demurrage was also properly left to the jury. As we have shown, the parties contemplated that a vessel should be sent. They knew that the defendant was to carry it to New York; that the vessel must call and lift the cargo at Haiti; and it inevitably followed that, if it was compelled to wait, the defendant must pay demurrage. Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 S. Ct. 754, 47 L. Ed. 1171, was quite another case. The seller did not know from how far the buyer would bring his cars to load. It is indeed at times a nice question what facts of which the parties have knowledge may measure proximate damages.

We agree that mere notice of the extent of the promisee's loss is not conclusive; the loss must be within the promisor's undertaking. That is no doubt a fictitious standard to apply, for a contract is not a promise to perform or pay damages. Yet we know of no test other than the loose one that the loss must be such that, had the promisor been originally faced with its possibility, he would have assented to its inclusion in what he must make good. It seems to us quite unreasonable to suppose that a seller in the plaintiff's position could have refused to recognize, under these circumstances, that he was chargeable with so direct a loss as this. It seems hardly serviceable to cite instances from the multitude of cases in which losses have been held remote or proximate, or in which the general rule has been repeated. We need only say that the cases cited as to profits on resale are quite beside the issues here.

For reasons already given, we think that the defendant was justified in holding the schooner at Cape Haiti until it finally appeared that the plaintiff would not deliver. The suggestion that the defendant was not, under such circumstances, itself liable to the schooner, we note only to pass. There was, indeed, a defect in proof that the hire actually paid corresponded with the market rate for similar fixtures. We shall assume that the plaintiff could not be charged with more. The case appears to have been tried upon the assumption that there was nothing exceptional in the hire in this charter party. In any case the point was nowhere raised.

The ninth request to charge concerned the defendant's right to recover for the item in any form, because the schooner had been chartered after the contract was made—a point bad in law. The exception to the colloquial charge was also to any consideration of the item. The same is true of the exception to the admission of the evidence; at least, there was no clear objection that the evidence was inadmissible because of the absence of proof that the hire was not above the market rate or of the best fixtures available to the defendant.

The rulings as to the admission of evi-

dence, so far as erroneous, were not serious enough to justify a reversal. The plaintiff was plainly in default, and so far as we can see without any excuse, except that some one had taken the wood on which it had relied to make delivery. Such a risk was clearly upon it, and not upon the buyer.

Judgment affirmed.