## UNITED STATES v. AMALGAMATED SUGAR CO.
### No. 1036.

Circuit Court of Appeals, Tenth Circuit.
Sept. 12, 1934.

William B. Waldo, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Dan B. Shields, U. S. Atty., of Salt Lake City, Utah, and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for the United States.

Emmett M. Bagley, of Salt Lake City, Utah (Robert L. Judd and Paul H. Ray, both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

Acting under the provisions of section 274 of the Revenue Act of 1924 (43 Stat. 297, 26 USCA §§ 1048–1051 notes, 1052, 1053 note, 1054), the Commissioner of Internal Revenue laid a deficiency income and excess profits tax of $210,810.56 for the year 1918 against the Amalgamated Sugar Company, hereinafter called the company, a corporation organized under the laws of the state of Utah, with its domicile at Ogden within that state. The company manufactures, refines, and sells beet sugar at wholesale. Throughout its existence it has consistently and uniformly kept its books of account on the accrual basis and has made its income tax returns accordingly. It owned and operated six refineries and warehouses in 1917, three in Utah and three in Idaho. The annual manufacturing and refining season embraces the months of October, November, and December. The company manufactured 924,516 bags of sugar during its fiscal year ended February 28, 1917, and to about the middle of February it had sold and delivered 411,907 bags of it. During that month contracts were entered into for the sale of 190,374 additional bags. That left 322,235 bags on hand unsold and undelivered at the end of the fiscal year. In making its return for the fiscal year 1917, the company reported as subject to tax the proceeds of the 411,907 bags sold and delivered and the proceeds of the 190,374 bags sold but undelivered. The tax was computed and paid accordingly. In June, 1925, about seven years thereafter, the Commissioner determined that the proceeds of sale of the 190,-

374 bags should have been included in the return for the fiscal year 1918, and thereupon imposed the deficiency assessment. That action rested upon the legal conclusion that the several sales were not consummated and title did not pass upon execution of the contracts, but upon delivery of the sugar. By way of adjustment the Commissioner tendered a refund for the asserted overpayment in 1917, and it was rejected.

The company sought a redetermination by the Board of Tax Appeals. The Board determined that the assessment was wrongfully made, except as to the invested capital tax of the previous year—a matter not involved here. 4 B. T. A. 568. Apparently entertaining doubt whether the remedy was to appeal to the Circuit Court of Appeals or to institute a direct suit for the recovery of the tax in question, the Commissioner pursued both remedies. An appeal was taken and this suit was instituted in the court below. The appeal was dismissed because the matter had been heard before the Board prior to the enactment of the Revenue Act of 1926 and decided afterwards. 26 USCA § 1064.

A jury was waived and this cause tried to the court. It was stipulated that the court should consider the record made before the Board. That was done and the court concurred in the conclusion reached by the Board. Judgment was rendered for the company. This appeal followed.

The first inquiry which we enter is that of title to the 190,374 bags of sugar at the close of the fiscal year 1917. If the company owned it, the tax was providently imposed; if not, it was wrong. The contracts for the sale of that sugar were identical with those uniformly used by the company throughout the conduct of its business. They were executed and entered into during the fiscal year ended February 28, 1917, but the sugar was delivered and the purchase price paid soon after March 1st, during the ensuing fiscal year. Each of them created a present obligation of sale and purchase of a specified quantity of sugar at a definite, fixed, and determined price, and provided that shipment should be made in proportionate quantities and at intervals during the life of the contract, but that all of it should be ordered shipped as soon as possible and that payment should be made in New York or Chicago exchange, no time for payment being stated. It is and has been the uniform custom existing in the sugar industry and in the conduct of the company's business for the purchaser to have sugar delivered at such places and in such quantities as his needs may require, and if not delivered within thirty days from the date of the contract, invoice is sent and payment made despite the fact that some or all of it remains in the warehouse of the seller. Oftentimes it is resold repeatedly before delivery and payment. Such a contract is regarded generally throughout the industry as an outright sale with the right of the purchaser to resell and direct immediate or deferred delivery according to his wishes, but the transaction is treated as one of sale with title presently vested in the purchaser.

After an extended hearing at which oral testimony and documentary evidence were submitted, the Board found in effect that the parties in each instance in question intended to make a sale with immediate passage of title and that such was the effect of the transaction. The Board is a fact-finding tribunal. Its finding is prima facie correct and should be sustained if it is supported by evidence. 26 USCA § 1218; Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Henderson Iron Works & Supply Co. v. Blair, 58 App. D. C. 114, 25 F.(2d) 538; Conklin-Zonne-Loomis Co. v. Commissioner (C. C. A.) 29 F.(2d) 698; Northwestern Motor Car Co. v. Commissioner (C. C. A.) 45 F.(2d) 357. Is the finding supported by evidence? In the first place, each contract refers to the transaction as a sale, not an agreement to sell at a future time. That is persuasive. The company filed and preserved such contracts as an original record. It kept a record in the form of a memorandum purporting to show the total amount of sugar manufactured and the quantity sold. That record was posted from day to day, thereby indicating currently the amount of sugar manufactured, the amount sold and the amount on hand subject to sale. Sugar embraced in contracts but not paid for nor shipped was included along with that paid for and delivered. That suggests that the company regarded such contracts as constituting present sales. Furthermore, on February 28, 1917, at the close of the fiscal year and prior to the time the controversy presented here arose, the company made the following entry in its general journal: "Charge to inventory cost of sugar sold $1,132,744.25. Credit sugar inventory $1,132,744.25. 411,907 bags at $2.75. This entry leaves 512,609 bags of sugar, consisting of 190,374 bags of sugar sold under contract which will net approximately $6.25 per bag and 322,235 bags of unsold sugar at $6.25, the fair market net

at this date." That entry points strongly to an understanding on the part of the company that the sugar in question had been sold during that fiscal year. The fact that it remained in the warehouse subject to shipping instructions does not argue that title had not passed. Nor is the date on which invoice was sent decisive because under the system employed by the company, an invoice was a mere statement of account due. If a broker made a sale, his commission was appropriately entered on the books of the company and settlement currently made regardless of the time payment of the purchase price was received or the sugar delivered. The insurance carried by the company contained a provision that it covered sugar sold but not delivered, again indicating that such sugar was regarded as the property of the purchaser. And the fact that the purchase price was paid thirty days after the contract was executed, whether the sugar had been delivered or not, and that a resale was often made during that time indicates that the purchaser understood he acquired the property upon execution of the contract. In fact, all the testimony was to the effect that the parties intended that title should pass concurrently with the execution of the contract.

Whether a contract is one of sale or one to sell depends very largely upon the intention of the parties. If they intend a present transfer of title it is a contract of sale; otherwise, it is a contract to sell. As between contracting parties, if the statute of frauds or the rights of third persons are not involved, neither immediate delivery of the chattels nor payment of the purchase price is essential to effect a present sale with immediate transfer of title. Hatch v. Oil Co., 100 U. S. 124, 25 L. Ed. 554; Stewart v. Commissioner (C. C. A.) 49 F.(2d) 987; Calcara v. United States (C. C. A.) 53 F.(2d) 767; McElwee v. Metropolitan Lumber Co. (C. C. A.) 69 F. 302; Jones v. Commercial Investment Trust, 64 Utah, 151, 228 P. 896; Kneeland v. Renner, 2 Kan. App. 451, 43 P. 95; Rail v. Little Falls Lumber Co., 47 Minn. 422, 50 N. W. 471.

But it is contended that the contracts were executory and that title remained in the company on February 28, 1917, because the property had not been segregated and identified in separate form. Beet sugar of a standard and uniform grade, in bags of one hundred pounds each, is fungible property. In that respect it falls within the same class as flour, grain, or oil. Title to an unseparated part or unit of a larger quantity of fungible property passes under a valid contract of sale without separation, or segregation, if that is the intention of the parties. Segregation is not essential to the validity of a sale of chattels of that kind. The owners of respective interests are tenants in common. And that doctrine should apply in the absence of some forbidding circumstance, although the property may be in two or more parts or parcels if it is a part of a common stock or supply. The contracts in question were to be filled with sugar manufactured by the company during the previous refining season and stored as a common stock in its warehouses in Utah and Idaho, for sale to its various customers. The sugar was one entity or mass although geographically separated and located in different places. The fact that it was stored in different warehouses used in the operation of the business did not render inapplicable the ordinary rules respecting the sale and passage of title to a part of fungible property without separation or segregation. Cushing v. Breed, 14 Allen (Mass.) 376, 92 Am. Dec. 777; Trejbal v. Packard Farmers' Warehouse Co., 124 Wash. 638, 215 P. 26; Icenhower v. Day (Mo. App.) 11 S.W.(2d) 1110; Jennings-Heywood Oil Syndicate v. Houssiere-Latrielle Oil Co., 127 La. 971, 54 So. 318, Ann. Cas. 1913E, 679; Gourd v. Healy, 206 N. Y. 423, 99 N. E. 1099. It should be noted that through adoption of two pertinent sections of the uniform sales act, community of interest in fungible property stored in a warehouse has been recognized in Utah since 1917.

"If authorized by agreement or by custom, a warehouseman may mingle fungible goods with other goods of the same kind and grade. In such case the various depositors of the mingled goods shall own the entire mass in common, and each depositor shall be entitled to such portion thereof as the amount deposited by him bears to the whole." 99-O-23, Revised Statutes of Utah, 1933.

"The warehouseman shall be severally liable to each depositor for the care and redelivery of his share of such mass to the same extent and under the same circumstances as if the goods has been kept separate." 99-O-24, Ibid.

We think it is clear that title to the sugar passed eo instanti upon the execution of the contracts and that thereafter the company held it in bailment for the respective purchasers.

As previously stated, the company has always kept its books of account on the accrual basis. Returns for the year 1917 were authorized according to that system if

true income was correctly reflected. Section 13 (d) Revenue Act 1916 (39 Stat. 771); United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. Income tax is an annual tax and ordinarily it must be returned for the year during which it was derived. The proper method of reporting the income upon the sugar in question was to deduct from the gross returns the cost and expenses attributable to the production of that income. The sale price was definitely agreed upon, the obligation of the purchaser to pay and of the seller to accept it unconditionally fixed, and all expenses attributable to its production incurred and definitely known before the close of the fiscal year 1917. These facts supplied all the data necessary to make the requisite calculation to ascertain the net income. The right to receive a definite sum as distinguished from its receipt and the fixed obligation to pay expenses as distinguished from actual payment, accrue items for income tax purposes if the taxpayer uses the accrual system of keeping its books of account. United States v. Anderson, supra; Aluminum Castings Co. v. Routzahn, 282 U. S. 92, 51 S. Ct. 11, 75 L. Ed. 234; Brown v. Helvering, 291 U. S. 193, 54 S. Ct. 356, 78 L. Ed. 725; Spring City Foundry Co. v. Commissioner, 292 U. S. 182, 54 S. Ct. 644, 78 L. Ed. 1200.

The proceeds of the sale of the sugar in question were correctly included in the return for the fiscal year ended February 28, 1917, and the judgment is therefore affirmed.