## UNITED STATES v. UTAH–IDAHO SUGAR CO.

### No. 1615.

Circuit Court of Appeals, Tenth Circuit.

May 2, 1938.

Wm. B. Waldo, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., Dan B. Shields, U. S. Atty., of Salt Lake City, Utah, and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., on the brief), for the United States.

Benj. H. Saunders, of Washington, D. C. (Charles D. Hamel, of Washington, D. C., and Ashby D. Boyle, of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is an action at law for the recovery of an alleged overpayment of income and profits taxes for the fiscal year ended February 28, 1918.

The taxpayer is a corporation engaged in the manufacture, refinement, and sale of sugar at wholesale. Its books were consistently kept on the accrual basis, and its fiscal year ended on February 28th;

but up to the end of 1916 its returns for income tax purposes were made on the basis of the calendar year. With permission of the Commissioner of Internal Revenue, and in order that the two might coincide, it made a return at February 28, 1917, for the 2 months ended at that time; and thereafter its returns were made on the basis of the fiscal year. The sugar manufactured and sold was of uniform grade, in bags of 100' pounds each. On February 28, 1917, the taxpayer had 888,-642½ bags on hand in its 11 warehouses located in Utah, Idaho, and Oregon. Contracts had been previously entered into for the sale and delivery of 160,492½ bags, but delivery was made after March 1st. The contracts were preserved as original records. As contracts were executed, appropriate deductions were currently made in the permanent records of the company concerning the quantity of sugar on hand and subject to sale. The entries thus made were on the daily sales record. The accounts receivable and the general books of account did not reflect the transactions until the sugar was shipped and invoiced to purchasers. The contracts for the sale of the 160,492½ bags were identical in substance and form with those uniformly used by the taxpayer in the conduct of its business at that time. Each specified the quantity of sugar sold, fixed the sale price, and provided that shipment should be completed within 30 days from the date of the contract; that delivery should be completed on receipt of the merchandise by the carrier; that, if the buyer should fail to furnish specifications within the stipulated period, the seller was authorized to complete the contract by shipment or delivery at its convenience as soon as possible after the expiration of the contract date without further notice; that the terms were cash, less 2 per cent., payable in New York exchange within 7 days after arrival; and that the agreement was subject to strikes, fires, transportation, and business conditions, and extraneous causes which rendered performance commercially impracticable. It had been and was the custom in the sugar industry and in the conduct of the business of the taxpayer for the purchaser to have sugar purchased under such a contract delivered at such places and in such quantities as his needs required; and, further, if sugar was not delivered within 30 days after the date of the contract, invoice was sent

forward, payment was made, and the sugar continued in the warehouses of the taxpayer subject to the order of the buyer. Sugar was frequently resold many times before payment and delivery. The commission of the broker making the sale was regarded as earned when the contract was executed regardless of delivery, but it usually was not paid until shipment went forward. The insurance carried by the taxpayer expressly included sugar held in trust or on commission or sold, but not delivered.

The taxpayer treated the gain on the 160,492½ bags of sugar as taxable for the fiscal year ended February 28, 1917. In making adjustments, the Commissioner treated it as taxable in the succeeding fiscal year, and a deficiency followed. Payment was made under protest and this suit was instituted to regain the amount. The taxpayer prevailed and the government appealed.

█ Income tax is an annual tax and it usually must be returned for the year in which the gain was derived. But a taxpayer keeping its books on the accrual basis was authorized to make its return for the year 1917 according to that system if the return correctly reflected true income. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; United States v. Amalgamated Sugar Co., 10 Cir., 72 F.2d 755.

█ The incurring of the right to receive and of the obligation to pay definite and fixed sums accrue items for income tax purposes where books are kept and returns made on the accrual basis. Actual receipt and actual payment are not essential. United States v. Anderson, supra; Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 51 S.Ct. 11, 75 L.Ed. 234; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; United States v. Amalgamated Sugar Co., supra.

█ Extended argument is addressed to the question whether title to the sugar passed upon the execution of the contracts or at the time of segregation and shipment. The government contends that title did not pass until separation and shipment—during the fiscal year ended February 28, 1918. The facts presented here are substantially identical in all material respects with those in United States v.

Amalgamated Sugar Company, supra. We there said that sugar of uniform grade in bags of uniform size is fungible property and falls in the same class with flour, sugar, or oil; that title to an unseparated part or unit of a larger quantity of fungible property passes under a valid contract of sale without separation or segregation where that is the intention of the contracting parties; that as between contracting parties, if the statute of frauds or the rights of third persons are not involved, neither immediate delivery nor payment of the purchase price is essential to effect a present sale with immediate passage of title; that title to the sugar passed eo instanti upon the execution of the contracts involved there; and that the company held it thereafter in bailment for the purchaser. The correctness of that holding is challenged. The language was general and broad; but it was used in a case presenting liability for income taxes where the seller consistently maintained its books of account and made its returns on the accrual basis. No question was involved or considered in respect of title as between parties to an action of replevin, attachment, or execution. The single question decided was the time at which profits arising from such transactions become taxable gain. The question of title entered only as a factor in determining the rights of the parties for the purpose of measuring the liability of the seller for taxable gain.

The contracts covering the 160,492½ bags of sugar each created a present, binding, and enforceable obligation of sale on the part of the taxpayer, and a present, binding, and enforceable obligation of purchase on the part of the buyer of a fixed amount of sugar at a specified price; and provided in unqualified language that payment should be made within 7 days after delivery. The purchaser was presently obligated to pay the definite amount, although payment was to be made at a deferred date. The obligation of the buyer was not essentially different in any material respect than it would have been had it been evidenced by a promissory note payable at the same time. The contracts, as of their respective dates of execution during the fiscal year ended February 28, 1917, accrued the gain for taxable purposes where the books of account were kept and the returns made on the accrual basis. That is the extent and scope of the question. It is wholly unnecessary to determine whether the contracts passed title before segregation and shipment when measured by the rights of parties in a replevin, attachment, execution, or other cognate action.

The next question is whether the suit was filed too late. Section 1113(a) of the Revenue Act of 1926, provides that no suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund has been duly filed with the Commissioner; and that no such suit shall be begun before the expiration of 6 months from the date of the filing of such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of 5 years from the date of the payment of such tax, unless the suit is begun within 2 years after the disallowance of the part of the claim to which the suit relates. 44 Stat. 9, 116. The provisions of that section were continued in force by section 1103(b) of the Revenue Act of 1932, in respect to a suit upon a claim which was disallowed before the latter act became effective. 47 Stat. 169, 286, 26 U.S.C.A. §§ 1672–1673 note.

Section 608 of the Revenue Act of 1928, provides that a refund shall be considered erroneous (a) if made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; or (b) in the case of a claim filed within the proper time and disallowed by the Commissioner after the enactment of the statute, if the refund was made after the expiration of the period of limitation for filing suit unless (1) suit was begun by the taxpayer within such period, or (2) within such period, the taxpayer and the Commissioner agreed in writing to suspend the running of the statute of limitations for filing suit from the date of the agreement to the date of final decision in one or more cases then pending before the Board of Tax Appeals or in the courts. 45 Stat. 791, 874, 26 U.S.C.A. § 1674.

The claim for refund requisite to this suit was rejected on August 18, 1930; and on September 23, 1931, the Commissioner and the taxpayer signed a formal agreement which suspended the running of the statute relating to the bringing of suit.

It recited that the case of United States v. Amalgamated Sugar Company was then pending in the United States Court for Utah, and that the final decision in that case might sustain the allegations relied upon by this taxpayer in support of its claim; and it then provided that the running of the statute "is hereby suspended from the date the commissioner signs this agreement to the date of final decision in the case hereinbefore named, both dates inclusive." The District Court entered final judgment in the case referred to on March 21, 1933. An appeal was taken to this court; judgment was entered on September 13, 1934, affirming the judgment of the District Court; and no petition for certiorari was filed. This suit was filed on October 22, 1935.

About 13 months intervened between the disallowance of the claim on August 18, 1930, and the signing of the agreement of suspension on September 23, 1931. Three hundred and twenty-nine days of the 2-year statute of limitations had not expired, but yet remained. The suit was filed more than 329 days after the entry of the judgment in this court, but less than that time after the expiration of the time provided by law in which petition for certiorari could have been filed. The precise question is whether the unexpired remainder of the statute of limitation should be computed from the date on which the judgment of this court was entered, or from the last date on which petition for certiorari could have been filed. The manifest object and purpose of the statute is plainly to conduce to the orderly determination of contested questions concerning income taxes through a minimum of litigation by enabling the Commissioner and the taxpayer to agree mutually that the running of the statute shall be suspended until the identical or a closely kindred question is decided in some case then pending before the Board of Tax Appeals or in court. The question thus in controversy is not adjudicated in the pending case with final and binding effect upon the parties thereto until the time has expired within which it is subject to review on appeal or certiorari. It must be assumed that in the enactment of the provision Congress was cognizant of the fact that such a judgment would not conclude the question with finality upon the parties to the action and with persuasive effect upon others as being determinative of their rights until it is no longer open to review on appeal or certiorari. Having this objective in mind, it seems manifest that Congress intended to authorize the Commissioner and a taxpayer to agree that the statute shall be suspended until there is a final judgment in the case already pending from which no appeal or review by certiorari can be had. Any other construction of the statute would be at variance with the obvious legislative purpose. The period is to be computed from the expiration of the time within which a petition for certiorari could be filed. The suit was filed within that period, and it was not too late.

■ The remaining question relates to the correctness of the judgment in amount. The amount is $137,643.68, with interest computed on $95,300.94 from February 17, 1926, and on $42,342.74 from April 6, 1926, at the rate of 6 per cent. per annum. In consideration of the Commissioner signing the agreement to suspend the running of the statute of limitations, the taxpayer signed a waiver of time and consented to the assessment and application of any deficiency in taxes properly found for the fiscal year ended February 28, 1917, as an offset against any overpayment in taxes properly found for the preceding fiscal year, resulting from a reallocation of taxable income between the two periods and made pursuant to the pending claim for refund. The parties stipulated at the trial that at the time the Commissioner caused a refund to be made on September 13, 1930, for the year ended February 28, 1918, an overpayment was determined for the year ended February 28, 1917, of $134,-499.15, together with $84,508.97 interest thereon; and that if the profit on the 160,-492½ bags of sugar was taxable in the year ended February 28, 1917, and not in the succeeding year, the amount of the tax refunded for the year ended February 28, 1917, was excessive to the extent of $21,976.63 and the tax collected for the year ended February 28, 1918, was excessive to the extent of $159,620.31. It is plain that in arriving at the amount of $137,643.68 fixed in the judgment, the court deducted from the excess in payment of taxes for the year ended February 28, 1918, the excess payment in refund of taxes made for the previous year, but failed to make any deduction for the excess in payment of interest. A further deduction should have been made to cover the excess in refund of interest. The

amount is the sum which bears the same ratio to the total refund in interest that the excess in refund of taxes bears to the total refund in taxes, namely $13,808.43.

The only error perceived is the excess in amount of the judgment. Ordinarily an appellate court cannot direct entry of a judgment for the correct amount. Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029. It may do so where all the facts were stipulated in the trial court and no occasion exists for a new trial. Graham v. Business Men's Assurance Co. of America, 10 Cir., 43 F.2d 673; Alexander v. King, 10 Cir., 46 F.2d 235, 74 A.L.R. 174; Maryland Casualty Co. v. Beebe, 10 Cir., 54 F.2d 743; New York Life Ins. Co. v. Tolbert, 10 Cir., 55 F.2d 10; Minnesota Mutual Life Ins. Co. v. Cost, 10 Cir., 72 F.2d 519; Sanderson v. Postal Life Ins. Co. of New York, 10 Cir., 87 F.2d 58. And it may order a remittitur. United States Potash Co. v. McNutt, 10 Cir., 70 F.2d 126.

The judgment will be reversed, and the cause remanded, unless a remittitur of $13,808.43 is filed in the office of the clerk of the trial court within 30 days from the date on which this opinion is filed, and within 10 days thereafter a certified copy of the record showing such remittitur is filed with the clerk of this court; but if such remittitur is filed within the specified time and a copy furnished, the judgment, less the amount of the remittitur, will be affirmed.