Rustam K. Kermani, Appellant, v. Liberty Mutual Insurance Company et al., Respondents.

Third Department, November 15, 1957.

*Edward M. Segal* and *Huldah C. Segal* for appellant.

*Charles B. Sullivan* and *Bruce R. Sullivan* for Liberty Mutual Insurance Company, respondent.

*Harold J. Hughes* for Alden F. Boure, respondent.

*Per Curiam.* In April, 1948 the plaintiff loaned $23,000 to the B & A Construction Co., Inc., making payment of the loan by a check. He received simultaneously a $3,000 bonus paid back

to him in cash. The B & A Construction Co., Inc., was then actively engaged in the business of building and selling houses financed under the Federal Housing Act. Plaintiff's explanation of the bonus on the trial was that defendant Boure who was president and owner of substantially all the stock of the corporation said he told plaintiff he could make " a lot of profit " from the enterprise and " he wanted me to have the $3,000 ".

As a means of securing the loan and giving plaintiff a priority in recoupment over other creditors, a plan was contrived to draw up a written document by which B & A transferred a portion of the building material which constituted its stock in trade to defendant Boure to hold this material in " trust " for plaintiff Kermani as collateral for the loan.

Accordingly, B & A conveyed to Boure " as trustee for " plaintiff, title to a list of building material. All this was described in very general terms; for example, as " 20 Lavatories complete @ $33.00 — 660.00; 20 tubs complete @ $89.00 — 1,780.00 ". There was also lumber described, for example, as " 60,000 feet of 2″ x 4″ — 8′ to 16′ @ $130.00 per thousand — 7,800.00 ". Boure agreed with plaintiff in a written document to hold the materials thus conveyed to him " in trust " as collateral security for the loan to B & A by plaintiff Kermani.

Plaintiff testified that he saw all this material and there " was lots more " and that it was put apart in a separate place in storage with his name on it; but his testimony of actual segregation is very vague and indefinite. He testified, for example, that " quite a lot " of the materials which he claimed had been segregated were physically on the building sites and were so covered by snow that " nobody could see them, all I could see was the material ".

In the light of other testimony in the record which indicated very strongly there was no physical segregation of material, the record fully justifies a finding that the general list of material was not physically segregated, or taken in any special custody by Boure or that it was separately identifiable in April, 1948 as described in the transfer to Boure.

Indeed, the proof is that the list was copied verbatim from another list that had formed the basis of another " trust " on another loan by plaintiff to another corporation of which Boure was president made several months earlier and which loan had been repaid.

If it was the same material being described in both instruments relating to transfers several months apart, there is nothing to show that after they had been conveyed on the earlier loan to the trustee from the other corporate borrower they were

ever conveyed back to B & A or that B & A ever regained a title to the items in order to convey them in April, 1948 back to Boure as " trustee " as collateral for the loan here in issue.

The finding of Judge SANTRY, who tried the case as Official Referee was that since there was never any physical segregation or even separate identification of the list of building materials transferred to Boure " as trustee " he had not acquired title or reduced to actual possession the corpus of the trust. It is abundantly sustained by the record; and from this the finding would follow readily that he had neither legal title nor special possession of the corpus.

As against creditors, surely, so wisp-like a " trust " would give the plaintiff no priority; and there are strong considerations of legal policy to prevent a theoretical segregation of goods actively used in trade from being held in special trust title with neither physical mark on the goods in trade nor any public filing of any instrument, to flag the unsuspecting person doing business with the borrower in the usual way. The evidence is overwhelming that B & A continued to do business building houses and utilizing its stock of supplies for this purpose in the usual course of its enterprise.

The B & A Company later ran into financial difficulties; the Sheriff levied on some of its property; it then went into bankruptcy. The " trust " corpus, if it ever existed as an entity, and to the extent it was not used in the business, now went into the general pool of assets. In the action against Boure as trustee, based on the theory of breach of fiduciary obligation undertaken by Boure to the plaintiff, the Official Referee dismissed the complaint because he was of opinion that Boure had acquired no title or separate control of the goods and hence there was no actual trust over property to breach. Even if it be assumed that title to the described property had passed to Boure as trustee, it is clear from the record that it was not intended by plaintiff and Boure that B & A should be restricted in the use of such material in its business; and that it was, on the contrary, intended that the corporation and Boure use the goods in the course of business; and no duty in such a situation would rest on Boure as trustee to segregate or hold apart what both parties intended to be used.

He might, even then, having undertaken to act as trustee for plaintiff in securing a debt of the corporate borrower of which he was president, principal stockholder, and thus in corporate control, be deemed required, in good faith so to conduct the affairs of the corporation as to prevent, while he had the power of choice to prevent, the assets from going below the point where

plaintiff's security was in danger. But the record fails to demonstrate that by his free choice he allowed the total assets to go below that point and no such theory was presented on the trial, plaintiff resting his case on the argument, as he argues here, that a sufficient transfer was effected to create a trust in goods which Boure was required to hold. To impose a liability on Boure for a breach of duty in allowing by his choice assets to go below the value of the trust he had assumed, it would be necessary to demonstrate clearly that before the Sheriff attached assets of the corporation they had in totality gone below the amount of plaintiff's loan by the free act of Boure.

Nothing of that sort is shown; what is shown is merely that after public authority had acted by the Sheriff's making a levy and just before the petition in bankruptcy was filed, plaintiff's lawyer asked Boure if he had " the " material and he said he did not have " the " material and he had " used it ". That he did not have " the " material which was never physically identified is an admission of no significance in this context.

Appellant argues that under the rule applicable to goods sold from an undifferentiated mass, such as sugar or grain, a sufficient title of the subject of this transfer passed to Boure as trustee without the need of physical segregation; and since he had all the goods in his possession he may not deny the special title. The rule allowing such a transfer of fungible goods without physical segregation from the larger mass of identical goods is a rule of necessity.

Dealing with wheat the court in *Kimberly* v. *Patchin* (19 N. Y. 330, 333) noted the impossibility of identifying " each constituent particle composing a quantity " as logical basis for the rule excusing the need for such identity. Wine sold in quantity was treated similarly in *Gourd* v. *Healy* (206 N. Y. 423).

Lumber, no doubt, could be found as a fact to fit into this category of goods under some circumstances, but the lumber case relied on by plaintiff (*Storm* v. *Rosenthal,* 156 App. Div. 544) did not pass directly on this question and turned on another point. We see no reason why a relatively small number of bathtubs or stairs or picture windows or lavatories should have to be treated as grain or coal; or any reason why they could not be marked and segregated. As to lumber, that may or may not be found as a question of fact to need segregation. Plaintiff's testimony was to the effect that there was in fact such segregation with his name on the material and we see no ground to disturb the conclusion of the Referee that segregation was feasible but not effected.

Thus, on the whole, we think the judgment in favor of Boure is amply warranted by the record, however broadly the duty of Boure as " trustee " may be viewed.

The judgment in favor of the defendant insurance company is likewise well founded in the record. The insurance company wrote a bond for $25,000 at the request of plaintiff's lawyer, insuring B & A corporation for any loss that it might sustain through larceny, theft, embezzlement, misappropriation, wrongful abstraction or other fraudulent or dishonest acts committed by Boure.

Before the bond itself was written the insurance company had issued a binder. The binder agreement identified Boure in the capacity in which his acts were to be covered as " individually and a trustee for " the plaintiff " in accordance with their contract ". The bond which, by the express terms of the binder, superseded the binder, described Boure as " president " of B & A.

Both the binder and the bond provided that " any loss covered by the bond " which " constitutes a loss to " plaintiff shall be " adjusted with and paid to " plaintiff. Both the binder and the bond described B & A as the " assured " and the protection afforded was against the assured's loss. The company agreed " to indemnify the assured ".

It seems clear to us, as it did to the Official Referee, that only if the assured B & A lost by reason of Boure's wrongdoing and, additionally, that plaintiff lost by the same wrongdoing, would the insurance company be required by its contract to indemnify plaintiff.

Even in the binder agreement in which Boure is described as " trustee " of plaintiff, the party " assured " is not plaintiff, but B & A. No one argues that B & A lost anything through any wrongdoing of Boure; and hence recovery against the insurance company on the bond is not justified.

There is nothing in the record to sustain a finding of theft or misappropriation, fraud, or similar wrongdoing against Boure which could reasonably come within the frame of the coverage of the policy. Boure did not steal or misappropriate the assets of B & A; he managed the business so that it ran into financial difficulties. This was misfortune, not larceny.

Even if his general duty as trustee might have required him, to the extent he had a free choice in the matter, to keep assets high enough to protect plaintiff, his failure to do so as a matter of misjudgment or mistake would not be wrongdoing for which the bond covered, even though it might expose Boure to recovery in a civil action. Something more than routine errors of busi-

ness judgment is required to meet the tests of "larceny, theft, embezzlement" and their cognates.

We are of opinion that plaintiff expected in making his loan to B & A that it would use its lumber and other assets to build houses and that his trustee, as president of B & A would carry on the house-building enterprise in the usual way in order to repay plaintiff's loan.

For example, plaintiff testified that before he made the loan in the process of checking the items which were in the "trust" he saw "quite a lot of the material" listed in the trust schedule on the building sites where houses were going up. He knew of extensive building operations in progress and it could scarcely be believed by any party concerned that it had been intended the building material on the site would not be incorporated into the houses, on the sale of which B & A's prosperity depended and in which plaintiff himself had been given an early share in anticipated profits when he made his loan.

Boure testified that plaintiff gave him personal assurance that the material could be used in the business despite the formal "trust" paper they had just solemnly signed. There are denials by other witnesses that such assurance was made, but it seems significant that plaintiff himself was not recalled to deny it.

The whole transaction seems to us to be a thin attempt to create a creditor's preference and to get an insurance company to underwrite the preference by a standard form of fidelity bond quite inappropriate to this kind of transaction.

The judgments should be affirmed, with costs to respondent Liberty Mutual Insurance Company.

FOSTER, P. J., BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Judgments affirmed, with costs to the respondent Liberty Mutual Insurance Company.